DAVIDSON D. WILLIAMS ET AL. *v.* BLACK ROCK YACHT CLUB, INC.
(AC 25150)

Schaller, Flynn and McLachlan, Js.

Argued January 7—officially released July 5, 2005

*Davidson D. Williams*, the appellants (plaintiffs).

*Carolyn R. Linsey*, for the appellee (defendant).

*Opinion*

SCHALLER, J. In this case of first impression, we must determine whether the internal rules and procedures of a social club that were applied to deny full membership to certain probationary members failed to comply with requirements contained in General Statutes § 33-1056 (a).[1] The plaintiffs, Davidson D. Williams and Barbara R. Williams,[2] appeal from the judgment of the trial court rendered in favor of the defendant, the Black Rock Yacht Club, Inc. On appeal, the plaintiffs claim that the court improperly (1) interpreted and applied § 33-1056 (a) and (2) limited their cross-examination of a defense witness by precluding them from introducing a document into evidence. We disagree and, accordingly, affirm the judgment of the trial court.

---

[1] One commentary has stated that "[t]he bitterness of a dispute is apt to be inversely proportionate to the area of conflict. Family rows are proverbial for their violence. A similar acerbity pervades quarrels in clubs, trade unions, professional associations, secret societies, churches, and educational institutions. Even a decisive defeat within the organization does not always discourage the losers. Their blood is up, and they are almost sure to carry the fight into the courts, hoping for better fortune on a fresh field of battle." Z. Chafee, Jr., "The Internal Affairs of Associations Not For Profit," 43 Harv. L. Rev. 993, 993 (1930).

[2] Davidson D. Williams and Barbara R. Williams also acted as parents and guardians of their minor children, and filed this action on behalf of Haley D. Williams, Taylor C. Williams and Stewart R. D. Williams. We refer in this opinion to Davidson D. Williams and Barbara R. Williams as the plaintiffs. We also note that Davidson D. Williams, an attorney licensed to practice law in Connecticut, acted both as trial and appellate counsel on behalf of his family.

The court set forth the relevant findings of fact in its memorandum of decision. The defendant is a nonstock corporation, and its primary purpose is to be a yacht club with various dining and social and recreational facilities, such as a swimming pool, tennis court and boating facilities.[3] The plaintiffs submitted an application dated March 21, 1998, to join the defendant as members. In March, 2000, the defendant offered the plaintiffs admission[4] as probationary members.[5] The defendant's bylaws specifically required payment of a *nonrefundable* admission fee. After paying all of the applicable fees, dues and expenses, the plaintiffs were accepted as probationary members. At the last meeting

[3] "As commonly understood, a 'club' is merely an organization or association of persons who meet or live together for the purpose of social intercourse or some other common object such as the pursuit of literature, science, politics, or good fellowship. . . ." 6 Am. Jur. 2d 395, Associations and Clubs § 3 (1999).

[4] By way of a letter dated March 24, 2000, the defendant's board of governors offered the plaintiffs a "Family A" probationary membership. The first bill consisted of the admission fee plus tax in the amount of $3850, half of the annual dues plus tax in the amount of $742.50 and an annual capital assessment in the amount of $400.

We note that the board approved an increase in the application fee from $3500 to $7000 for applications received on or after March 15, 1999.

[5] Article VI, § 7, of the defendant's bylaws provides: "Application for membership shall be made in such form as prescribed by the Board of Governors, each applicant shall complete the Application for Membership and be recommended, in writing, by a sponsor and two (2) endorsers, all of whom shall be in good standing and have been members for at least three (3) years, probationary year included. The application, along with three (3) letters of recommendation, should be forwarded to the Membership Chairman on or before February 1 of the membership year. The Membership Committee shall arrange to meet the applicants and their sponsors as soon as possible thereafter. The Membership Committee shall pass the application on to the Board of Governors, with recommendations, for final action.

"Applicants whose names are submitted to the Board of Governors, after investigation, may be elected to Probationary Membership with the affirmative vote [of] the Board and no more than two (2) negative votes.

"No Flag Officer or Membership Committee member shall sponsor or endorse any candidate for membership in the Club, and no member shall [sponsor] or endorse more than two (2) candidates for membership in any one year."

of the season, the defendant's board of governors voted to extend the plaintiffs' probationary status for the 2001 season.[6] In a letter dated October 26, 2000, the board explained that the reason for the second probationary year was "due to a number of reported incidents over the summer, whereby it was felt there was a disregard for the rules of the Club regarding your control over the actions of your children." The board indicated that it regretted taking such action and instructed the plaintiffs to contact either their sponsor, the chairman of the membership committee or any board member for further information.

Over the course of the 2001 season, the board received approximately twelve complaints regarding the plaintiffs. Those complaints repeatedly focused on the plaintiffs' failure to supervise their children adequately. For example, at two separate club events, the children were unable to find the plaintiffs, even with other club members assisting in the search. Another member observed the plaintiffs' young children unsupervised near a dangerously high seawall. Other complaints focused on violations of the club rule that required children younger than twelve to be accompanied by an adult.[7] As a result of those complaints,[8] the board sent the plaintiffs a letter dated October 10, 2001, terminating their association with the club. The letter stated: "We regret having to inform you that, at its

[6] Article II of the bylaws empowers the board of governors with the general management and control of the club's property.

[7] The defendant's rules provide that "[n]o child under 12 years of age is permitted on the Club grounds, except during instruction hours, unless a parent or other adult specifically responsible for the child is also on the grounds." Additionally, "[m]embers are responsible for the conduct and safety of their children . . . while the children are on Club premises."

[8] There was also testimony before the court concerning Davidson D. Williams' tying of his dog on the tennis court and his subsequent argument with another member who reminded him of the club prohibition against having animals on the tennis court.

October 9 meeting, the Board of Governors of the [defendant] voted not to extend your membership in the Club. This action was taken, by unanimous vote, as a result of your repeated disregard for Club Rules even after warnings and counseling by Club members. It is not a decision that the Board takes lightly. Having not seen an improvement in your compliance with the Rules during this past season, your second as Probationary Members, the Board felt compelled to terminate your association with the Club in accordance with its By-laws."

The plaintiffs' operative complaint contained five counts. Specifically, the plaintiffs alleged that the defendant committed ultra vires acts and violated § 33-1056 (a) and General Statutes § 42-110a et seq. They sought injunctive relief and a declaratory judgment. Following a trial to the court, judgment was rendered in favor of the defendant. The court concluded that the defendant was regulated by § 33-1056 (a) and was in compliance with the mandate of that statute. Additional facts will be set forth as necessary.

I

The plaintiffs first claim that the court improperly interpreted and applied § 33-1056 (a). Specifically, they argue that the court improperly concluded that (1) the bylaws concerning the admission were reasonable and (2) the bylaws were equally enforced as to all the members and candidates. After setting forth certain relevant background and legal principles, we will address each of the plaintiffs' specific arguments in turn.

A

As a preliminary matter, we set forth certain background information to facilitate our discussion. It is well established in both our jurisprudence and that of other states that generally "courts should be reluctant to

intervene in the affairs of private clubs . . . ." (Citation omitted.) *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.*, 188 Conn. 531, 537, 450 A.2d 369 (1982); *Brown* v. *Windley*, Superior Court, judicial district of Fairfield, Docket No. 382951 (November 6, 2001) (30 Conn. L. Rptr. 652); *Goldman* v. *Rockrimmon Country Club, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 123676 (May 17, 1995); see also *Boca West Club, Inc.* v. *Levine*, 578 So. 2d 14, 15 (Fla. App. 1991); 6 Am. Jur. 2d 399, Associations and Clubs § 8 (1999).

The primary exception to the general rule occurs when a member of a club has been sanctioned or expelled in violation of the club's bylaws. A member is entitled to notice of the charges against him, notice of the time and place of the hearing, and a full and fair opportunity to be present and to offer a defense. *Gervasi* v. *Societa Giusippi Garibaldi*, 96 Conn. 50, 57, 112 A. 693 (1921); see also *Davenport* v. *Society of the Cincinnati*, 46 Conn. Sup. 411, 441, 754 A.2d 225 (1999); *DeNino* v. *Wethersfield Country Club*, Superior Court, judicial district of Hartford, Docket No. 801570 (February 1, 2001).

Section 33-1056 (a) applies to nonstock corporations such as the defendant and provides that "[m]embership shall be governed by such rules of admission, retention, withdrawal and expulsion as the bylaws shall prescribe, provided all such bylaws shall be *reasonable*, germane to the purposes of the corporation, and equally enforced as to all members." (Emphasis added.) Our Supreme Court has explained that this "provision adopts common law standards of fair play and forms the basis for bylaws to be challenged by a member where they are not reasonable . . . ." (Internal quotation marks omitted.) *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.*, supra, 188 Conn. 535.

There are relatively few cases that squarely address the facts of the present case, which is not *an expulsion case*, but rather *exclusion from membership*. One court has explained that critical distinction. "[T]he law accords important rights and status to members of voluntary organizations not extended to mere aspirants to membership therein. One wrongfully expelled from such an organization may be restored to membership by *mandamus*. . . . Or he may bring an action for damages . . . . *On the other hand, there is no abstract right to be admitted to membership in a voluntary association . . . and a court will not compel the admission of a person to membership in such an organization who has not been elected according to its rules and by-laws* . . . . The general rule is that there is no legal remedy for exclusion of such an individual from admission into a voluntary association, no matter how arbitrary or unjust the exclusion. 4 Am. Jur., Associations and Clubs, § 11, p. 462 . . . ." (Citations omitted; emphasis added.) *Trautwein* v. *Harbourt*, 40 N.J. Super. 247, 259–60, 123 A.2d 30, cert. denied, 22 N.J. 220, 125 A.2d 233 (1956). With the foregoing background in mind, we now turn to the plaintiffs' specific claims.

B

The plaintiffs claim that the court improperly concluded that the club's bylaws concerning the admission procedures were reasonable. Specifically, the plaintiffs argue that the bylaws improperly require significant admission and capital assessment fees, and fail to offer probationary members the protection of notice and a hearing prior to termination and the corresponding loss of the fees paid to the club. We are not persuaded.

The following additional facts are necessary for our resolution of the plaintiffs' claim. Pursuant to the applicable fee schedule, the plaintiffs paid the nonrefundable admission fee and other costs associated with obtaining

a probationary membership.[9] Article VI, § 1, of the defendant's bylaws sets forth the requirements for membership and provides in relevant part: *"Membership requirements will be selective and only those persons who are economically solvent,* possess good character and integrity, and who will be socially compatible with the existing members of the Club will be accepted. Membership in the Club will not be denied any person because of race, color, sex, national origin, religion or creed. All prospective members shall meet the requirements for membership classification for which they apply." (Emphasis added.)

After serving an extra year as probationary members, the plaintiffs received a letter terminating their association with the defendant. They did not receive prior notice of the board's action or an opportunity to be heard. The letter indicated that the board acted unanimously. Section seven of article II of the defendant's bylaws states that the board "shall have power by vote of seven of its members to suspend or, after notice and opportunity to be heard, to expel or drop any member of the Club for conduct which in its opinion endangers the welfare, interest and character of the Club or for failure to pay dues or other indebtedness to the Club."

We now identify the applicable standard of review. "Because this issue raises a question of statutory interpretation, our review is plenary. . . . A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body." (Internal quotation marks omitted.) *Bruneau* v. *Seabrook,* 84 Conn. App. 667, 670, 854 A.2d 818, cert. denied, 271 Conn. 930, 859 A.2d

---

[9] Section eight of article VI requires probationary members to pay the initiation fee and pro rata share of dues and assessments. Additionally, article VII, § 8, provides that "[p]ersons admitted to Probationary membership shall *pay a nonrefundable admission* fee"; (emphasis added); as well as purchase a total of $1000 in bonds within twelve months.

583 (2004). Our legislature recently enacted General Statutes § 1-2z, which provides that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

As we have noted, our Supreme Court's decision in *Sterner* provides us with some guidance. In that case, our Supreme Court instructed that in interpreting the predecessor to § 33-1056, courts should consider the common-law standards of fair play and the reasonableness of the club's bylaws. *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.*, supra, 188 Conn. 535. We conclude that the defendant's bylaws comport with such standards.

It is clear from the bylaws that one of the criteria to be utilized by the board when deciding to accept a new member is economic solvency. We cannot say that it was an unreasonable requirement for prospective members to pay a nonrefundable admission fee or other costs associated with the use of the facilities during the probationary period. The imposition of such fees also required prospective members to demonstrate the commitment expected by the board. The admission fee further provided a strong financial incentive to foster compliance with the club rules. The plaintiffs were aware of those fees when they submitted their application. Additionally, the court specifically noted the absence of any evidence that the bylaws, in particular the nonrefundable admission fee, served as some sort of "moneymaking scheme" to benefit the defendant. The court made an explicit finding that instances in which probationary members were denied full membership were rare.

Finally, we are satisfied that the policy permitting the board to reject a probationary member without notice and a hearing does not rise to the level of a violation of the notion of fair play. It was within the board's discretion to retain the authority to reject a potential member without affording notice or a formal hearing detailing the reasons. "Membership in a voluntary . . . association is generally held to be a privilege which may be accorded or withheld, and not a right which can be gained independently and then enforced. Generally, courts will not compel admission to a voluntary association, and one who has bee excluded from membership in a purely social organization cannot recover damages for the exclusion . . . . " 6 Am. Jur. 2d 406–407, supra, § 18. Furthermore, clubs such as the defendant generally are free to set their own qualifications concerning the admission to or exclusion from membership. Id., § 19, p. 408. As we have stated, courts are reluctant to become involved with the internal policies of social clubs. The present case does not afford a compelling reason to depart from that principle. In short, we conclude that the court properly determined that the defendant's rules and regulations are reasonable and germane to the club's purpose and, accordingly, did not violate § 33-1056 (a).

## C

The plaintiffs next claim that the court improperly concluded that the bylaws were enforced equally as to all the members and candidates. Specifically, the plaintiffs argue that they were singled out for unfair treatment; specifically, the board strictly enforced the bylaws when it came to their application for membership, but relaxed the standards when it came to other applicants. They further contend that the statute requires equal enforcement of the bylaws. We are not persuaded.

The following additional facts are necessary for the resolution of the plaintiffs' claim. During the course of the trial, the plaintiffs introduced evidence regarding several other families and individuals who were admitted to membership in the defendant club. The plaintiffs also demonstrated that in some cases, certain bylaws were not followed during the admission process. George Booth, a twenty-one year member of the club, testified that record keeping by the club had been inconsistent during his tenure. He also stated that a certain "legacy" member had received a letter that incorrectly indicated a probationary status requirement. Another "legacy" member was admitted to membership even though he had submitted his application after he had reached the age of thirty, in violation of the bylaw requiring submission of the application prior to becoming thirty. Another family received an improper class of membership due to the age of the head of the household.[10]

Booth testified that during his three years as chairman of the membership committee, he had processed more than 100 applications. He stated that despite those and other minor inconsistencies, it was his practice to follow the bylaws to the best of his ability and that he never intentionally departed from them. He also explained that the defendant was managed by volunteers and that mistakes did occur from time to time. John Haskard, who was the defendant's present chairman of the membership committee, also indicated that every attempt was made to comply with the bylaws with respect to applications for membership and that at no time did he ever deviate intentionally from the applicable bylaws. The court specifically credited that testimony.

[10] Article VI, § 1 (b), of the bylaws provides that a family whose head of the household is thirty-one years old or older is eligible for a "Family A" membership while a family whose head of the household is younger than thirty-one is eligible for a "Family B" membership.

As a preliminary matter, we set forth our standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Maritime Ventures, LLC* v. *Norwalk*, 85 Conn. App. 38, 45, 855 A.2d 1011, cert. granted on other grounds, 271 Conn. 943, 861 A.2d 514 (2004).

The appropriate starting point for our discussion is the relevant statutory language. See *State* v. *Reynolds*, 264 Conn. 1, 70, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). Section 33-1056 (a) provides in relevant part that "[m]embership shall be governed by such rules of admission . . . and [be] equally enforced as to all members." Concededly, the statute's text does not contain an intent requirement. Nevertheless, our Supreme Court has adopted the notion of fair play into the meaning of § 33-1056. We conclude, therefore, that a club such as the defendant is required only to make a good faith effort to apply its rules equally concerning admission. To impose a more stringent requirement would place an undue burden on such clubs, resulting in every accidental noncompliance with the bylaws constituting a statutory violation. This would be unreasonable, particularly for clubs such as the defendant that rely on volunteer members rather than professional managers. We cannot conclude that the legislature could have envisioned such a result. See *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 778–79, 739 A.2d 238 (1999).

In the present case, the court specifically found that the mistakes made by the board concerning the admission of some persons other than the plaintiffs were not relevant to the plaintiffs' claims. Furthermore, "the various mistakes were not purposeful, and probably related to the fact that the defendant is operated by a volunteer and not a professional staff." There was ample evidence to support that factual finding. We conclude that under our Supreme Court's interpretation of § 33-1056 (a), in order to show that the bylaws were enforced unequally, at a minimum, the plaintiffs were required to demonstrate some evidence of an intent by the members to treat them differently from other candidates. To the contrary, there was evidence that another family was placed on a second year of probation for conduct similar to that of the plaintiffs.[11] Faced with the court's specific factual finding, supported by the evidence, that any errors made in the admission process were the result of innocent mistakes made by volunteers, coupled with the absence of intent by the board or the membership committee to treat the plaintiffs differently from others seeking admission as members, the plaintiffs' claim of unequal enforcement of the bylaws must fail.

## II

The plaintiffs next claim that the court improperly limited their cross-examination of a defense witness by precluding them from introducing a document into evidence. Specifically, the plaintiffs argue that the court improperly prohibited them from challenging the credibility of Molly Edison, a club member[12] who testified on behalf of the defendant. We disagree.

Edison testified about her personal observations regarding the lack of parental supervision of the plain-

[11] That other family indicated remorse and a willingness to rectify the problems and, as a result, subsequently was offered full membership.

[12] Edison was not a member of the board.

tiffs' children at the club. During cross-examination, the plaintiffs attempted to elicit testimony concerning her knowledge of certain criminal activity by two club members, Alfred Lenoci and Joseph Ganim. The plaintiffs attempted to introduce into evidence a newspaper article, dated October 10, 2001, that documented Lenoci's guilty plea to charges of bribery, mail fraud and various other crimes, as well as the public corruption scandal involving Ganim, the former mayor of Bridgeport. The plaintiffs contended that the purpose of that evidence was to challenge Edison's credibility.

The defendant objected on the ground of relevance. Specifically, the objection was premised on the fact that the Lenocis were not probationary members and were not being considered for membership, and that the supervision of the Lenocis' children was not an issue. The court, in sustaining the objection, stated: "There's no indication [Edison] is on the board of directors at the time of the guilty pleas. There is no indication she reviewed it. There is no indication that she had anything to do or not to do with any of it. I do not see where we are going, so I will sustain the objection on the present, on the present foundation."

The plaintiffs argue that they were harmed by the exclusion of that evidence because they were precluded from challenging Edison's credibility and motive regarding member conduct harmful to the club. They also contend that such evidence was relevant to their claim of selective enforcement, namely, the disparity in the treatment of the plaintiffs relative to misconduct by other members.

As a preliminary matter, we set forth the standard of review, as well as certain legal principles that guide our resolution of the plaintiffs' claim. "It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial

court has broad discretion in ruling on the admissibility . . . of evidence. . . . [Its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every *reasonable presumption* in favor of upholding the trial court's ruling, and only upset it for a *manifest abuse of discretion.*" (Emphasis in original; internal quotation marks omitted.) *White* v. *Westport,* 72 Conn. App. 169, 172, 804 A.2d 1011 (2002); see also *Kalams* v. *Giacchetto,* 268 Conn. 244, 249, 842 A.2d 1100 (2004); *Otero* v. *Housing Authority,* 86 Conn. App. 103, 111, 860 A.2d 285 (2004).

Additionally, we note that "[e]vidence is admissible if it is relevant to the issues raised in the pleadings. Conn. Code Evid. § 4-1, commentary . . . . Relevant evidence is evidence which has a logical tendency to aid the trier of fact in the determination of an issue. . . . No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience. . . . It has been said that [o]ne fact is relevant to another if in the common course of events the existence of the one, alone or with other facts, renders the existence of the other either more certain or more probable." (Citation omitted; internal quotation marks omitted.) *Juchniewicz* v. *Bridgeport Hospital,* 86 Conn. App. 310, 322, 860 A.2d 1275 (2004), cert. granted on other grounds, 272 Conn. 917, 866 A.2d 1287 (2005). "Conversely, evidence that is not relevant is inadmissible. Conn. Code Evid. § 4-2." (Internal quotation marks omitted.) *White* v. *Westport,* supra, 72 Conn. App. 173.

The issue before the court concerned the defendant's denial of full membership to *probationary members.* The action or inaction of the defendant in taking disciplinary action against full members, such as Lenoci and Ganim, for personal misconduct had no relevance or

significance concerning the denial of full membership to the plaintiffs, who were at all times *probationary members*. Additionally, we agree with the court that because Edison was not a member of the board, she had no authority to commence disciplinary procedures against either full members or probationary members. Finally, we note that Edison's testimony concerning the plaintiffs' conduct was based on her personal observations. In contrast, Edison lacked any direct or personal knowledge about misconduct on the part of Lenoci or Ganim. We conclude, therefore, that the court did not abuse its discretion in excluding the newspaper article.

The judgment is affirmed.

In this opinion the other judges concurred.