# DANIEL R. GERVAIS *v.* PAMELA M. GERVAIS
## (AC 24612)

Lavery, C. J., and Schaller and Harper, Js.

Argued April 28—officially released October 11, 2005

*Campbell D. Barrett*, with whom were *Michael R. Suppappola*, certified legal intern, and, on the brief, *C. Michael Budlong*, for the appellant (defendant).

*Dina M. Menchetti*, with whom was *John P. Febbroriello*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Pamela M. Gervais, appeals from the postdissolution order of the trial court that terminated the obligation of the plaintiff, Daniel R. Gervais, to pay alimony as a result of her cohabitation with another man. On appeal, the defendant claims that the court improperly (1) failed to consider her sworn financial affidavit when determining whether her financial needs had been altered as a result of her cohabitation, (2) failed to consider the criteria of General Statutes § 46b-82 and (3) terminated the alimony award without a sufficient evidentiary basis. We agree with the defendant with respect to her first two issues and, accordingly, reverse the judgment of the trial court.[1]

The following facts and procedural history are relevant to our discussion. The plaintiff and the defendant were married in 1970 and have one child who has reached the age of majority. The court dissolved the parties' marriage on November 16, 2001. The judgment of dissolution incorporated by reference a settlement agreement forged by the parties. The terms of the agreement required, inter alia, that the plaintiff pay the defendant alimony in the amount of $1500 per month for a period of fifteen years. The alimony was nonmodifiable but would terminate on either party's death, the defendant's remarriage or her cohabitation with a male

---

[1] We need not, therefore, reach the defendant's third issue on appeal.

as if she were married, in accordance with the General Statutes.

By a motion dated September 27, 2002, the plaintiff requested the court to terminate, reduce or modify his alimony payment on the ground that the defendant was cohabitating with a man. The court scheduled a hearing on the plaintiff's motion for October 28, 2002. The plaintiff subpoenaed both the defendant and her alleged cohabitator, Gordon Page. The defendant, who had been served properly with the subpoena, failed to attend the hearing. The court suspended the alimony payments and ordered the plaintiff to make payments to a trustee account pending the outcome of his motion.

The court held a hearing on the plaintiff's motion over the course of four days. During the hearing, the defendant was questioned several times with regard to her most recent financial affidavit. In its August 21, 2003 memorandum of decision, the court found that the defendant and Page had been cohabitating as if they were married. In support of that finding, the court noted that the defendant admitted to having an intimate relationship with Page, sharing expenses with him and having gone on several vacations together. In making that finding, the court specifically discredited the testimony of the defendant, her father and Page regarding the issue of cohabitation. The court also determined that the plaintiff had met his burden of showing that the defendant's financial circumstances had changed as a result of her cohabitation. Specifically, the court found that the defendant and Page shared expenses and engaged in accountings to ensure that both were paying their share of expenses. The court specifically discredited the defendant's testimony regarding that issue. The court granted the plaintiff's motion to terminate alimony, effective October 12, 2002, the date the motion was served on the defendant.

On December 1, 2003, the defendant filed a motion for an articulation of the court's decision. The court granted the motion in part and stated that the defendant did not file a financial affidavit either at the time of the dissolution or at the hearing on the plaintiff's motion to terminate alimony. It also explained that it found the defendant's testimony regarding her increased expenses not to be credible as a result of her "dishonesty in other parts of her testimony [which] casts serious doubt on all of her testimony . . . ."

The court also articulated that it did not consider the factors set forth in § 46b-82[2] when it terminated the alimony payments. The court stated that it had "determined both that [the defendant] was cohabitating pursuant to the terms of their stipulation and that such cohabitation had altered her financial needs." The court again stated that the defendant had failed to submit a financial affidavit either at the time of the dissolution or at any time while the plaintiff's motion was pending. This appeal followed. Additional facts will be set forth as necessary.

Before discussing the specifics of the defendant's appeal, we identify certain legal principles that are relevant to our discussion. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . .

---

[2] General Statutes § 46b-82 provides in relevant part that the court, when determining alimony payments, "shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . ."

Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . .

"We apply that standard of review because it reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties. . . . As pithily stated by Justice Parskey, in matters of this sort our role of necessity is not to work the vineyard but rather to prune the occasional excrescence." (Citations omitted; internal quotation marks omitted.) *Chyung* v. *Chyung*, 86 Conn. App. 665, 667–68, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005).

I

The defendant first claims that the court improperly failed to consider her sworn financial affidavit when

determining whether her financial needs had been altered as a result of her cohabitation. Specifically, she argues that the court abused its discretion by failing to consider her sworn financial affidavits from both the original dissolution action and the hearing on the plaintiff's motion. We agree.

The following additional facts are necessary for our resolution of the defendant's claim. In its articulation, the court twice stated that the defendant had failed to file a financial affidavit, either at the time of the dissolution or during the pendency of the motion to terminate alimony. The record reveals that the defendant completed a sworn financial affidavit dated October 23, 2000, approximately one year before the judgment of dissolution was rendered. That affidavit is contained in the court file. We have been unable, however, to locate the affidavit that allegedly was completed and updated at the time of the hearing on the plaintiff's motion to terminate his alimony payments.

Our review of the transcript of the proceedings, however, reveals that the defendant was questioned extensively by the plaintiff's counsel with respect to a financial affidavit she completed on April 24, 2003. The defendant was asked about payments for a garage and whether those payments were "reflected on [her] financial affidavit that [she] filed that day . . . ." The court then indicated that it needed to examine *that affidavit.* The plaintiff's counsel then proceeded to ask several more questions regarding the April 24, 2003 affidavit and showed that document to the defendant during her testimony. During redirect examination, the defendant again was shown her April 24, 2003 affidavit by the plaintiff's counsel. Extensive questioning regarding her income followed.

"As has been repeatedly stated by this court, judicial review of a trial court's exercise of its broad discretion

in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . Our function in reviewing such discretionary decisions is to determine whether the decision of the trial court was clearly erroneous in view of the evidence and pleadings in the whole record. . . . With respect to the financial awards . . . great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . For that reason, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) *Brent* v. *Lebowitz*, 67 Conn. App. 527, 529–30, 787 A.2d 621, cert. granted on other grounds, 260 Conn. 902, 793 A.2d 1087 (2002) (appeal withdrawn April 25, 2002). "Reluctance to reverse the trial court's exercise of discretion, however, should not mean that the door is entirely closed to successful appeals in dissolution cases." *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 421, 479 A.2d 826 (1984).

As a general rule, "the financial awards in a marital dissolution case should be based on the parties' current financial circumstances to the extent reasonably possible." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 662, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000); see also *Cuneo* v. *Cuneo*, 12 Conn. App. 702, 709, 533 A.2d 1226 (1987). In the present case, the court did not consider the defendant's April 24, 2003 affidavit, which detailed her financial situation at the time of the plaintiff's pending motion. We conclude that this constituted an abuse of the court's discretion. See *Bielen* v. *Bielen*, 12 Conn. App. 513, 515, 531 A.2d 941 (1987) (if objection to motion for postjudgment attorney's fees properly raised, error for court to rule on motion after refusing to consider parties' current financial position).

A review of our case law supports that conclusion. For example, in *Cuneo* v. *Cuneo*, supra, 12 Conn. App. 702, the defendant sought to submit an updated financial affidavit after the case had been delayed approximately ten months. Id., 707–708. The trial court refused to accept the updated affidavit. Id., 708. We concluded that the court's failure to consider the new affidavit constituted an abuse of discretion. Id., 709. As part of our rationale, we emphasized that financial awards in marital dissolution cases should be based, to the extent possible, on the parties' current financial situation. Id.

We reached a similar result in *Kinderman* v. *Kinderman*, 19 Conn. App. 534, 562 A.2d 1151, cert. denied, 212 Conn. 817, 565 A.2d 535 (1989). In that case, the plaintiff appealed from orders pertaining to the dissolution of his marriage. Id., 535. In crafting those orders, the trial court relied on an older financial affidavit rather than the one submitted just before the trial. Id., 537–38. We concluded that the court should have utilized the updated affidavit, again, so as to consider the current financial circumstances of the parties. Id.

In *Szczerkowski* v. *Karmelowicz*, 60 Conn. App. 429, 759 A.2d 1050 (2000), the trial court granted several postdissolution motions concerning visitation and support that were filed by the plaintiff. Id., 430. The defendant appealed and argued that the court abused its discretion by making financial orders without having before it the financial affidavits of the parties. Id., 435. We agreed with the defendant and determined that the court could not find a substantial change in circumstances as required by General Statutes § 46b-86 (a) without the affidavits. *Szczerkowski* v. *Karmelowicz*, supra, 435; see also *Friedman* v. *Friedman*, 180 Conn. 132, 136–37, 429 A.2d 823 (1980).

Although neither *Cuneo*, *Kinderman* or *Szczerkowski* is precisely on point with the issue in the present

case, those cases do stand for the proposition that the trial court, to the extent possible, should consider the present financial circumstances of the parties before entering financial orders relevant to a marital dissolution. We are faced with a situation in which the defendant submitted an updated financial affidavit and was extensively questioned about it during the proceedings before the court. Nevertheless, the court twice stated that defendant had failed to submit that document and, thus, the court *never considered* it with respect to her financial situation when it terminated the plaintiff's alimony. We do not agree with the plaintiff's argument that it was harmless error because the court discredited much of the defendant's testimony and therefore necessarily would have discredited her affidavit as well. Of course, had the court reviewed the April 24, 2003 affidavit, as the trier of fact, it could have accepted or rejected the information contained therein. The court, in its articulation, however, indicated that it did not consider that document, which was a vital part of the proceedings. As a result, the court abused its discretion.

"Normally, when a portion of the court's financial order is found to be flawed, we return the matter to the trial court for a new hearing on the ground that in marital dissolution jurisprudence, financial orders often are interwoven. [I]ssues involving financial orders [in dissolution cases] are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Rosato* v. *Rosato*, 77 Conn. App. 9, 20, 822 A.2d 974 (2003). The present case falls within that general rule, and we conclude, therefore, that a new hearing is necessary.

## II

The defendant next claims that the court improperly failed to consider the criteria of § 46b-82. Specifically,

the defendant argues that the initial alimony factors contained in § 46a-82 must be considered as a part of the court's inquiry under § 46b-86 (b). Although we concluded in part I that the court abused its discretion and that a new hearing is necessary, we reach the defendant's claim because it raises a legal issue likely to arise on remand. See *Zhang* v. *Omnipoint Communications Enterprises, Inc.*, 272 Conn. 627, 641, 866 A.2d 588 (2005).

The following additional facts are necessary for our discussion. Following the court's granting of the plaintiff's motion to terminate alimony, the defendant filed a motion for an articulation of several aspects of the decision. Relevant to the defendant's claim, she requested that the court "[a]rticulate whether [it] considered the statutory factors set forth in . . . § 46b-82 when it terminated the plaintiff's alimony obligation." In response, the court stated: "No. The parties' separation agreement, incorporated into the dissolution judgment, provided that alimony would terminate upon the defendant's 'cohabitation with a male as if she were married in accordance with the Connecticut General Statutes.' The court determined both that she was cohabitating pursuant to the terms of their stipulation and that such cohabitation had altered her financial needs. The court then applied the terms of the parties' agreement that had been incorporated into the judgment. The defendant did not submit to the court a sworn financial affidavit either at the time of the dissolution decree or at any time while the postjudgment motion that is the subject of this appeal was pending."

We now set forth the applicable standard of review for the defendant's claim regarding the relationship between § 46b-82 and § 46b-86 (b). "Because this issue raises a question of statutory interpretation, our review is plenary. . . . A fundamental tenet of statutory construction is that statutes are to be considered to give

effect to the apparent intention of the lawmaking body.
. . . Our legislature recently enacted General Statutes
§ 1-2z, which provides that [t]he meaning of a statute
shall, in the first instance, be ascertained from the text
of the statute itself and its relationship to other statutes.
If, after examining such text and considering such rela-
tionship, the meaning of such text is plain and unambig-
uous and does not yield absurd or unworkable results,
extratextual evidence of the meaning of the statute shall
not be considered." (Citation omitted; internal quota-
tion marks omitted.) *Williams* v. *Black Rock Yacht Club,*
*Inc.*, 90 Conn. App. 27, 35–36, 877 A.2d 849 (2005);
see also *Carmel Hollow Associates Ltd. Partnership* v.
*Bethlehem*, 269 Conn. 120, 129, 848 A.2d 451 (2004).

In Connecticut, modification of alimony,[3] after the
date of dissolution, is governed by § 46b-86. *Crowley*
v. *Crowley*, 46 Conn. App. 87, 91, 699 A.2d 1029 (1997).
In the case of a substantial change in circumstances,
subsection (a) "authorizes a court to modify the terms
of a dissolution agreement . . . ." *Zitnay* v. *Zitnay*,
90 Conn. App. 71, 78, 875 A.2d 583 (2005).

In *Crowley*, we explained the specific method by
which a trial court should proceed with a motion
brought pursuant to § 46b-86 (a). "When presented with
a motion for modification, a court must first determine
whether there has been a substantial change in the
financial circumstances of one or both of the parties.
. . . *Second, if the court finds a substantial change*
*in circumstances, it may properly consider the motion*

---

[3] Our Supreme Court has defined the purpose of alimony as "the obligation
of support that spouses assume toward each other by virtue of the marriage."
*Rubin* v. *Rubin*, 204 Conn. 224, 234, 527 A.2d 1184 (1987). We have stated that
"[a]limony is always represented by money and is damages to compensate
for loss of marital support and maintenance." (Internal quotation marks
omitted.) *Crowley* v. *Crowley*, 46 Conn. App. 87, 98, 699 A.2d 1029 (1997);
see also Black's Law Dictionary (6th Ed. 1990) (alimony defined as allowance
paid to former spouse for maintenance following divorce).

*and, on the basis of the § 46b-82 criteria, make an order for modification. . . .* The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties." (Citations omitted; emphasis added.) *Crowley* v. *Crowley*, supra, 46 Conn. App. 92. We further concluded that the "court's power to modify is created by statute, and it must make its determination on the basis of the statutory standards. . . . The trial court is limited to reviewing the current [financial] situation of the parties in light of the statutory criteria set forth in § 46b-82." Id., 98.

The use of the § 46b-82 criteria with respect to actions concerning § 46b-86 (a) has long been endorsed by our Supreme Court. For example, in *Borkowski* v. *Borkowski*, 228 Conn. 729, 638 A.2d 1060 (1994), the court stated: "In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. They chiefly have to do with the needs and financial resources of the parties. . . . More specifically, these criteria, outlined in General Statutes § 46b-82, require the court to consider the needs and financial resources of each of the parties . . . as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties . . . .

"Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification." (Citations omitted; internal quotation marks omitted.) *Borkowski* v. *Borkowski*, supra, 228 Conn. 736–37; see also *Gay* v. *Gay*, 266 Conn. 641, 645, 835 A.2d 1 (2003); *Hardisty* v. *Hardisty*, 183 Conn. 253, 258–59, 439 A.2d 307 (1981); *Schorsch* v. *Schorsch*, 53 Conn. App. 378, 382, 731 A.2d 330 (1999); *Shearn* v.

*Shearn,* 50 Conn. App. 225, 228–29, 717 A.2d 793 (1998); *Burns* v. *Burns,* 41 Conn. App. 716, 726–27, 677 A.2d 971, cert. denied, 239 Conn. 906, 682 A.2d 997 (1996); *Sweeny* v. *Sweeny,* 9 Conn. App. 498, 502–503, 519 A.2d 1237 (1987).

We now discuss briefly § 46b-86 (b), which is commonly known as the cohabitation statute.[4] It provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

Our Supreme Court has stated that § 46b-86 (b) "was an express grant of authority to modify or terminate alimony upon [a] showing that the receiving party is living with another person and that such living arrangements result in a change of circumstances that alter the financial needs of such party. 20 S. Proc., Pt. 7, 1977 Sess., p. 2793, remarks of Senator Salvatore DePiano." (Internal quotation marks omitted.) *DeMaria* v. *DeMaria,* 247 Conn. 715, 722, 724 A.2d 1088 (1999). Further-

---

[4] "General Statutes § 46b-86 (b) is the so-called cohabitation statute, which was enacted four years after [General Statutes] § 46b-86 (a) [in 1977] to correct the injustice of making a party pay alimony when his or her ex-spouse is living with a person of the opposite sex, without marrying, to prevent the loss of support. H.B. No. 6174, 1977 Sess. (Statement of Purpose)." (Internal quotation marks omitted.) *Connolly* v. *Connolly,* 191 Conn. 468, 473–74, 464 A.2d 837 (1983).

more, § 46b-86 (b) "does not use the word cohabitation. The legislature instead chose the broader language of living with another person rather than cohabitation . . . . Because, however, living with another person without financial benefit did not establish sufficient reason to refashion an award of alimony under General Statutes § [46b-82], the legislature imposed the additional requirement that the party making alimony payments prove that the living arrangement has resulted in a change in circumstances that alters the financial needs of the alimony recipient. Therefore, that additional requirement, in effect, serves as a limitation. Pursuant to § 46b-86 (b), the nonmarital union must be one with attendant financial consequences before the trial court may alter an award of alimony." (Citation omitted; internal quotation marks omitted.) *DeMaria* v. *DeMaria,* supra, 720; see also *DiStefano* v. *DiStefano,* 67 Conn. App. 628, 633, 787 A.2d 675 (2002); *Duhl* v. *Duhl,* 7 Conn. App. 92, 94, 507 A.2d 523, cert. denied, 200 Conn. 803, 509 A.2d 517 (1986). Essentially, subsection (b) of § 46b-86, following a finding that a party is living with another individual, allows the court to modify, reduce, suspend or terminate the payment of alimony if there is a corresponding change in financial circumstances. Put another way, in cases involving the cohabitation statute, subsection (b) lowers the threshold predicate for the modification of alimony to situations where the court finds cohabitation and a change in circumstances so as to alter the needs of the party. The higher burden required by § 46b-86 (a) of a "substantial change" in circumstances is lowered when there is cohabitation. As our Supreme Court has explained, § 46b-86 (b) "requires only a change of circumstances, not a substantial change as required by § 46b-86 (a)." (Internal quotation marks omitted.) *D'Ascanio* v. *D'Ascanio,* 237 Conn. 481, 486, 678 A.2d 469 (1996); *Kaplan* v. *Kaplan,* 185 Conn. 42, 45–46, 440 A.2d 252 (1981).

Before a court can consider whether to modify alimony under the authority of § 46b-86, a threshold question must be resolved. With respect to a motion brought pursuant to subsection (a), the court must find a substantial change in circumstances with respect to one or both of the parties. *Borkowski* v. *Borkowski*, supra, 228 Conn. 737. Following such a finding, the court then answers the question of modification, taking into account the general alimony factors found in § 46b-82. See id., 736; see also *Shearn* v. *Shearn*, supra, 50 Conn. App. 228; see also 1 A. Lindey & L. Parley, Separation Agreements and Antenuptial Contracts (2d Ed. 1999), § 22.66 [4]. We note that the text of § 46b-86 (a) does not contain an express reference to § 46b-82 or any of its factors. Nevertheless, the appellate courts of this state consistently have interpreted § 46b-86 (a) in such a manner. See, e.g., *Gay* v. *Gay*, supra, 266 Conn. 645; *Borkowski* v. *Borkowski*, supra, 736–37; *Schorsch* v. *Schorsch*, supra, 53 Conn. App. 382–83; *Burns* v. *Burns*, supra, 41 Conn. App. 726–27. The legislature is presumed to be mindful of the judicial construction of relevant legislation. *Campion* v. *Board of Aldermen*, 85 Conn. App. 820, 846 n.18, 859 A.2d 586 (2004), cert. granted on other grounds, 272 Conn. 920, 867 A.2d 837 (2005).

With respect to subsection (b), we conclude that once the court finds (1) cohabitation and (2) a change in the financial needs of the party receiving alimony and cohabitating, the court should engage in the same analysis as with subsection (a); that is, consideration of the § 46b-82 factors. Relevant to this case, the difference between subsections (a) and (b) is the threshold question. Subsection (b) requires the finding of cohabitation, and a lower standard with respect to a change in circumstances. Once those findings are made, however, a uniform application of the § 46b-82 factors is warranted and should be applied to a request for a postdissolution

modification of alimony whether brought under either subsection. The use of the § 46b-82 criteria serves to ensure that the court has an updated picture of the parties' financial situation.

"It is an accepted principle of statutory construction that, if possible, the component parts of a statute should be construed harmoniously in order to render an overall reasonable interpretation. . . . It also is well established that we are required to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result." (Citation omitted; internal quotation marks omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 748, 865 A.2d 428 (2005). Thus, we interpret subsection (b) as well as subsection (a) to require the court to consider the general alimony factors of § 46b-82 after the respective threshold inquiry has been satisfied.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.