JONATHAN M. TANZMAN *v.* MARGARET E. MEURER
(AC 30723)
(AC 30973)

DiPentima, C. J., and Gruendel and West, Js.

Argued March 17—officially released May 3, 2011

*Samuel V. Schoonmaker IV*, with whom was *Wendy Dunne DiChristina*, for the appellant (plaintiff).

*Gaetano Ferro*, with whom was *Sarah E. Murray*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Jonathan M. Tanzman, appeals from the judgment of the trial court denying his postjudgment motion to modify his unallocated alimony and child support obligations to the defendant, Margaret E. Meurer.[1] The dispositive issue raised by the plaintiff in this appeal is whether the court improperly denied

---

[1] Although the plaintiff also appealed from various postjudgment orders awarding attorney's fees in favor of the defendant, the plaintiff abandoned these claims during oral argument in this court. Accordingly, we confine our analysis to the issues raised by the trial court's denial of the postjudgment motion for modification of alimony and child support.

his motion for modification given an allegedly substantial change in his financial circumstances.[2] We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On November 6, 2006, the parties divorced after approximately eleven years of marriage. At the time of the divorce, the court ordered, inter alia, that the plaintiff make monthly payments of unallocated alimony and child support to the defendant in the amount of $16,000 for fourteen years.[3] This order was premised on the court's evaluation of the plaintiff's average historical income as a day trader and the earning capacities of both parties.[4] Importantly, however, the court assigned no specific monetary value to either parties' earning capacity or earned incomes at the time of the divorce. Instead, the court noted that the plaintiff had "an earning capacity far beyond his current [earned income] earnings," which, based on the plaintiff's financial affidavit, consisted of a weekly loss of $224, but a total yearly net income of $789,266.[5] As the court explained, "[a]lthough . . . changes in the market . . . have proven a challenge to [the plaintiff's] continued financial success, the court does not believe that [the plaintiff] has made satisfactory efforts toward gaining new employment." Thus, despite the plaintiff's argument that, at the time of the parties' divorce, his

[2] Because we conclude that this claim is dispositive, we need not address the plaintiff's additional claims that the trial court improperly (1) altered the rationale for its decision after this court's orders of articulation and (2) misapplied the law by designating as income, taxable litigation proceeds awarded to the plaintiff as an equitable division.

[3] At the time of their divorce, the parties had three minor children.

[4] We note that in both its November 6, 2006 and October 7, 2008 memoranda of decision, the court relied on earning capacity, rather than actual earned income, in setting the plaintiff's alimony and child support obligations and denying his motion for modification, respectively. On appeal, the plaintiff does not challenge the court's application of earning capacity for purposes of determining his alimony and child support obligations.

[5] Additionally, the plaintiff's September 25, 2006 financial affidavit discloses approximately $2.3 million in assets.

decreased earning capacity should mitigate any alimony and child support obligation,[6] the court concluded that no such mitigation was justified.

On January 9, 2008, the plaintiff filed a postjudgment motion for a downward modification to his unallocated alimony and child support obligations. In support thereof, the plaintiff alleged that a substantial change in his financial circumstances had occurred, specifically as it concerned his then present actual earnings, as compared to the earning capacity attributed to him previously by the court at the time of the divorce. In fact, the allegedly substantial change in circumstances was the plaintiff's acquisition of new employment with an annual earned income of $100,000. Nevertheless, during a hearing on his motion for modification, the plaintiff conceded that his total "taxable income" in 2008 would be in excess of $800,000.[7] On October 7, 2008, the court denied the plaintiff's motion for modification, concluding that the "[p]laintiff ha[d] failed to establish the threshold predicate required to entertain [the] motion"—namely, a substantial change in the plaintiff's financial circumstances.[8] As the court emphasized, the plaintiff's income "ha[d] not been reduced from the income disclosed at the time of [the divorce]. . . . [To the contrary], the plaintiff's income was almost identical to what he disclosed at the time of [the divorce]."[9] Moreover, notwithstanding the change in

[6] Prior to the parties' divorce, the plaintiff had "enjoyed considerable success as a day trader . . . [h]owever, due to changes in the industry, he ha[d] been unsuccessful at trading and claim[ed] that he [was] unable to find another job in the field." Evidence presented at the time of the divorce indicated, however, that the plaintiff's inability to obtain employment also may have been the result of his desire to enjoy "a more relaxed lifestyle."

[7] The plaintiff's revised financial affidavit, dated August 4, 2008, discloses approximately $1.7 million in assets.

[8] See General Statutes § 46b-86 (a).

[9] To clarify, the court's reference to the plaintiff's "income," is to the "total" income disclosed by the plaintiff at the time of the divorce, 2006, and the time the plaintiff sought the postjudgment downward modification to his alimony and child support obligations, 2008. Semantics aside, however,

the plaintiff's *earned income*, the court reiterated its conclusion that its order was based on the plaintiff's *earning capacity*, which remained unchanged, although unspecified monetarily, from the time of the parties' divorce.[10] This appeal followed.

The plaintiff now claims that the court improperly denied his postjudgment motion for modification. Specifically, he argues that the court incorrectly determined that obtaining postjudgment employment with an annual earned income of $100,000 did not constitute a substantial change in circumstances from those that existed at the time the court entered its alimony and child support order. Additionally, the plaintiff argues that by not attributing a specific monetary value to his earning capacity, the court could not possibly make a legitimate determination as to whether a substantial change in the plaintiff's postjudgment financial circumstances had occurred.

Before addressing the merits of the plaintiff's claim, we begin with the applicable legal principles and standard of review governing our analysis. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic

---

it is clear from the record that both the initial order of support and subsequent denial of the plaintiff's motion for modification, were based on the court's consideration of the plaintiff's earning capacity, not on a specific monetary amount of earned income.

[10] The plaintiff does not dispute the fact that the court never assigned a specific monetary value to the plaintiff's earning capacity, either at the time of the parties' divorce, or at the time the plaintiff sought the postjudgment modification to the court's order.

relations case . . . ." (Internal quotation marks omitted.) *Schade* v. *Schade*, 110 Conn. App. 57, 62, 954 A.2d 846, cert. denied, 289 Conn. 945, 959 A.2d 1009 (2008).

"Trial courts have broad discretion in deciding motions for modification. . . . Modification of [an unallocated award] of alimony [and child support], after the date of a dissolution judgment, is governed by General Statutes § 46b-86. . . . When . . . the disputed issue is [an unallocated] alimony [and child support award], the applicable provision of the statute is § 46b-86 (a), which provides that a final order for [unallocated] alimony [and child support] may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances. . . . The change may be in the circumstances of *either party*. . . . The date of the most recent prior proceeding in which an alimony order was entered is the appropriate date to use in determining whether a significant change in circumstances warrants a modification of an [unallocated] alimony [and child support] award." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Crowley* v. *Crowley*, 46 Conn. App. 87, 91–92, 699 A.2d 1029 (1997).

We previously have "explained the specific method by which a trial court should proceed with a motion brought pursuant to § 46b-86 (a). When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . *Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the [General Statutes] [§]§ 46b-82 [and] [46b-84 (d)] criteria, make an order for modification. . . .* The court has the authority to issue a modification only if it conforms the order to the distinct and

definite changes in the circumstances of the parties."
(Emphasis in original; internal quotation marks omit-
ted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 850–51,
882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88
(2005). "Simply put, before the court may modify an
[unallocated] alimony [and child support] award pursu-
ant to § 46b-86, it must make a threshold finding of a
substantial change in circumstances with respect to
one of the parties." *Schade* v. *Schade*, supra, 110 Conn.
App. 63.

In the present case, the plaintiff sought a downward
modification to his unallocated alimony and child sup-
port obligations on the basis that his postjudgment
acquisition of new employment with an annual earned
income of $100,000, constituted a substantial change in
the financial circumstances that existed at the time
the award was entered. He argues that the ongoing
deterioration of the value of his earning capacity, cou-
pled with his newly acquired postjudgment earned
income, justified a downward modification to the
court's award. We conclude, however, that the plain-
tiff's reliance on an allegedly substantial change
between the monetary value of his postjudgment *earned
income* and the unspecified monetary value of his *earn-
ing capacity* at the time the court entered its award is
misplaced and disingenuous. Although the plaintiff's
financial affidavit submitted at the time of the parties'
divorce disclosed earned income at a weekly loss of
$224, the court never specifically adopted this finding,
nor did the court rely on the plaintiff's earned income in
determining the unallocated alimony and child support
award. See *Gervais* v. *Gervais*, supra, 91 Conn. App.
851 ("[t]he court has the authority to issue a modifica-
tion only if it conforms the order to the distinct and
definite changes in the circumstances of the parties"
[internal quotation marks omitted]). Rather, the court
relied explicitly on the plaintiff's *earning capacity*, both

in setting the award and, subsequently, denying the plaintiff's motion for a modification thereto.

In emphasizing the near identical monetary values of the plaintiff's total income at the time of the parties' divorce and at the time when the plaintiff sought a modification to his alimony and child support obligations, the court articulated adequately its threshold finding that no substantial postjudgment change had occurred with respect to the plaintiff's financial circumstances, specifically as they related to his earning capacity. We find it telling that the court's evaluation of the plaintiff's earning capacity, as a foundation for its award and denial of the plaintiff's motion for modification, remained unchanged throughout the underlying proceedings. Indeed, the fact that the plaintiff's earning capacity had deteriorated was as readily apparent at the time of the parties' divorce as it was at the time that the court denied the plaintiff's motion for modification. Finally, despite his arguments to the contrary, the plaintiff has failed to provide us with any statute, case law or rule of practice that requires the trial court to specify an exact earning capacity when calculating an alimony and child support award. See *Chyung* v. *Chyung*, 86 Conn. App. 665, 675–76, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005). In contrast to the plaintiff's position, our review of the case law suggests that earning capacity, as a standard by which the court determines alimony and child support obligations, is meant to be a flexible concept, particularly suited to cases where the designation of a precise monetary value of earned income is inappropriate. See *Weinstein* v. *Weinstein*, 87 Conn. App. 699, 710, 867 A.2d 111 (2005) ("Generally, one's earning capacity is not synonymous with actual earned income. Our Supreme Court has stated that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount

which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." [Internal quotation marks omitted.]), rev'd on other grounds, 280 Conn. 764, 911 A.2d 1077, after remand, 104 Conn. App. 482, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008); see also *Hart* v. *Hart*, 19 Conn. App. 91, 95, 561 A.2d 151 ("[i]t is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quit or avoided obtaining employment in his field"), cert. denied, 212 Conn. 813, 565 A.2d 535 (1989).

In sum, we conclude that the court did not abuse its discretion in determining that the plaintiff's postjudgment attainment of employment with an annual earned income of $100,000 did not constitute a substantial change in the plaintiff's financial circumstances as they existed at the time of the parties' divorce. It is undisputed that the plaintiff's unallocated alimony and child support obligations were based not on earned income, but on earning capacity, which the court properly deemed as unchanged at the time the plaintiff sought a downward modification to his obligations. Accordingly, the plaintiff's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.