CHRISTINE SCHADE *v.* EDGAR W. SCHADE
(AC 28543)

DiPentima, Robinson and Peters, Js.

Argued April 17—officially released September 2, 2008

*Julia B. Morris*, for the appellant (defendant).

*Philip K. Meister*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant, Edgar W. Schade, appeals from the judgment of the trial court rendered on his motion for modification of alimony. On appeal, the defendant claims that the court improperly failed to reduce the alimony award on the basis of a substantial change in circumstances. We disagree and, accordingly, affirm the judgment of the trial court.

The following factual and procedural history is relevant to our discussion. The defendant and the plaintiff, Christine Schade, were married on September 25, 1982. The court rendered a dissolution of the parties' marriage on June 22, 2004. The court incorporated the terms of a separation agreement, signed by the parties, into its judgment. The eighteen page agreement provided, inter alia, that the defendant would pay the plaintiff alimony in the amount of $120,000 per year at the rate of $2308 per week. This obligation would begin at the time the marital home was sold and continue for a period of twelve years. Alimony was nonmodifiable as to duration, but the amount was subject to modification. The settlement agreement specifically provided that "[t]he amount of alimony paid to the [plaintiff] is based on the [defendant's] gross earnings of [$325,000] per year as reflected on his current financial affidavit at the time of dissolution."

At the time of the dissolution, the defendant was a cofounder, shareholder, vice president and employee of the Stone Insurance Agency. In July, 2005, the president of the Stone Insurance Agency, Donald Rittman, learned of potential problems with some financing agreements. Rittman hired attorney David Ryan to investigate the possibility of fraud in certain financing agreements and insurance contracts involving the defendant. In early August, 2005, Rittman placed the defendant on paid leave. The defendant met with Rittman and Ryan on two subsequent occasions and acknowledged "inaccuracies in the listing of insurance companies and premiums in the referenced documents" that the defendant had signed. On September 9, 2005, Rittman discharged the defendant from his employment.[1]

The plaintiff received alimony payments from September, 2005, until November, 2005.[2] On November 18, 2005, the defendant filed a motion to modify alimony, alleging a substantial change of circumstances. Specifically, he claimed that he had not received a severance package or any income since the date of his discharge. He also indicated that he was subject to a noncompete clause that would hinder his ability to obtain comparable employment. On November 22, 2005, the parties entered into a written agreement, approved by the court, which provided, in part, that three alimony payments would be paid to the plaintiff from an escrow account.

On December 20, 2005, the plaintiff filed a motion for contempt, alleging that the defendant had failed to make alimony payments and was in arrears for the

[1] Rittman testified that a major client threatened to end its business relationship with the Stone Insurance Agency. The termination of the defendant's employment was necessary to keep this client's business.

[2] The sale of the marital home had been completed, commencing the alimony payments in September, 2005.

past four weeks. In February, 2006, the plaintiff filed a motion for modification, seeking, inter alia, child support payments.[3] The basis for this request was the defendant's failure to pay alimony as ordered. She also filed a motion for contempt and claimed that the defendant's arrearage was eleven weeks and totaled $25,377.

Following an evidentiary hearing concerning the issues raised by the parties' motions, the court issued a memorandum of decision on August 11, 2006. The court observed that the defendant's talents and efforts appeared to have been a significant factor in the success of the Stone Insurance Agency. The court specifically found that "[t]here was only one reason for the change in the employment status of [the defendant]—his own actions in making inaccurate representations in financing agreements. . . . His very own affirmative actions placed him in that situation." It noted that the defendant had spoken to people in the insurance trade and to former clients of the Stone Insurance Agency and attended industry conventions. In late February, 2006, the defendant began a consulting position with a Massachusetts entity known as the Lighthouse Insurance Agency, earning $50,000 per year.

The court found that the defendant was licensed to sell various forms of insurance and could have regained his securities license but had not made any effort to do so. It also found that the defendant had not met with any employment recruiters, despite his talent and experience. The court further found that the defendant had not made any effort to obtain a release of the noncompete agreement.

The court determined that the defendant had not made any alimony payments to the plaintiff since mid-November, 2005. He had maintained, however, all of his

---

[3] The parties' separation agreement did not include a specific award of child support.

other personal expenses, including $65,000 in attorney's fees. He had purchased a gift of diamond earrings for his girlfriend and a $16,000 automobile for his daughter. The court found that "despite his assertion of being unable to keep up his alimony payments, he was looking into buying a more expensive home for himself."

The court found that the defendant's earning capacity was far in excess of his present earnings and that he did not pursue any of the considerable potential avenues to remedy his financial situation. It observed that the defendant intentionally was causing a financially stressful situation for the plaintiff and was avoiding his "present familial financial obligations of unallocated support and alimony."

The court found the defendant in contempt and ordered him to pay all alimony due. It then modified the support award to weekly alimony in the amount of $854, weekly child support in the amount of $300 and a weekly accrual of an alimony arrearage in the amount of $1154 on a temporary basis. The defendant also was ordered to pay the plaintiff's attorney fees.

The defendant filed a trilogy of motions following the court's decision. Specifically, he moved for reargument, reconsideration and an articulation.

The court granted the motion for articulation and, to clarify its prior decision, issued a memorandum of decision on January 24, 2007. It stated that it had reviewed the evidence and considered the applicable case law and statutory guidelines in issuing its decision. It further found the defendant's present and temporary earning capacity to be approximately $100,000. The court, however, also indicated that "the amount used is a 'minimum,'" as it had not been "convinced by [the defendant's] testimony and presentation that his earnings and earning capacity are as limited as he professes." The court therefore did not alter its August 11,

2006 orders. It scheduled a hearing for November 28, 2007, to review the financial situation of the parties. The defendant then filed the present appeal.

On appeal, the defendant claims that the court improperly failed to reduce the alimony award on the basis of a substantial change in circumstances. Specifically, he argues that the court's order did not provide him with any substantive relief and that it is inequitable, given his employment situation. We conclude that the court's financial orders do not constitute an abuse of discretion.

As a preliminary matter, we set forth the standard of review and legal principles relevant to our discussion. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *Simms* v. *Simms*, 283 Conn. 494, 502, 927 A.2d 894 (2007); *Doody* v. *Doody*, 99 Conn. App. 512, 516, 914 A.2d 1058 (2007).

The present case concerns the postjudgment modification of a support award. "Modification of alimony is governed by General Statutes § 46b-86, subsection (a) of which provides in relevant part: Unless and to the extent that the decree precludes modification . . . an order for alimony . . . may at any time thereafter be . . . altered or modified . . . upon a showing of a substantial change in the circumstances of either party . . . ." (Internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 693, 941 A.2d 301 (2008); see also *Kalinowski* v. *Kropelnicki*, 92 Conn. App. 344, 350, 885 A.2d 194 (2005). As the party seeking modification,

the defendant had the burden of proving a substantial change in circumstances. See *Simms* v. *Simms*, supra, 283 Conn. 502; *Arena* v. *Arena*, 92 Conn. App. 463, 467, 885 A.2d 765 (2005).

We previously have "explained the specific method by which a trial court should proceed with a motion brought pursuant to § 46b-86 (a). When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . *Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the [General Statutes] § 46b-82 criteria, make an order for modification.* . . . The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties." (Emphasis in original; internal quotation marks omitted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 850–51, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005). Simply put, before the court may modify an alimony award pursuant to § 46b-86, it must make a threshold finding of a substantial change in circumstances with respect to one of the parties. Id., 854; see also *Borkowski* v. *Borkowski*, 228 Conn. 729, 735–36, 638 A.2d 1060 (1994).

In the present case, the court did not expressly find a substantial change in circumstances in either the August 11, 2006 memorandum of decision or the January 24, 2007 articulation. A careful reading of these memoranda reveals that such a finding was found implicitly.[4] We previously have determined that an implicit finding of a substantial change of circumstances by the trial court will satisfy the threshold predicate for modification of a support order. It does not

---

[4] We note that in the January 24, 2007 articulation, the court stated that it previously had "ordered a reduced alimony payment obligation . . . ."

escape our scrutiny that the question of a substantial change in circumstances was thoroughly addressed by the trial court in its memorandum of decision, in which it notes the defendant's financial status at the time of the dissolution and at the time of the hearing. A fair reading of the trial court's memorandum of decision and its articulation leads us to the more logical and compelling conclusion that the trial court did find a substantial change of circumstances and then concluded that the alimony order should remain the same. See *Schorsch* v. *Schorsch*, 53 Conn. App. 378, 383, 731 A.2d 330 (1999).

The court found that, at the time of the dissolution, the defendant's income was $325,000. Following the termination of his employment, he obtained employment with the Lighthouse Insurance Agency, earning $50,000 per year. The court described the defendant's employment situation as having changed significantly, albeit as a result of his actions. As a result, the court modified the support award from approximately $2300 per week in alimony, to $854 per week in alimony, $300 per week in child support and an alimony accrual of $1154 per week.[5] We conclude, therefore, that the court implicitly found a substantial change in circumstances and modified the support award.[6]

---

[5] "The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment. . . . As a general rule, the court should construe [a] judgment as it would construe any document or written contract in evidence before it. . . . Effect must be given to that which is clearly implied as well as to that which is expressed." (Internal quotation marks omitted.) *Moasser* v. *Becker*, 107 Conn. App. 130, 135, 946 A.2d 230 (2008).

[6] We note that in the August 11, 2006 decision, the court stated: "While [the defendant] protests that his diminished income prevents him from paying alimony, the fact that he himself brought on the situation forecloses him from legitimately escaping his obligations. *Sanchione* v. *Sanchione*, 173 Conn. 397, 407, 378 A.2d 522 (1977); *Wanatowitz* v. *Wanatowitz*, 12 Conn. App. 616, 620, 533 A.2d 239 (1987)."

In the *Sanchione* case, our Supreme Court concluded: "Inability to pay does not automatically entitle a party to a decrease of an alimony order. It must be excusable and not brought about by the defendant's own fault.

We now address whether the court abused its discretion with respect to the modification of the support order. The defendant maintains that as a result of the substantial change in circumstances in both his employment situation and overall earning capacity, the court should have lowered his support obligations. He asserts that the support order is unjust or inequitable, that the finding of an earning capacity of $100,000 necessitated a reduction and that the court should have considered the same criteria as when the initial award was made. We are not persuaded.

There is no way to determine simply from the affidavits and finding what factors the court considered, whether the husband's expenses were greater than necessary, whether his inability to pay was a result of his own extravagance, neglect, misconduct or other unacceptable reason, or why so many of his financial obligations were satisfied, as evidenced by his affidavits, yet the plaintiff wife was paid absolutely nothing on her weekly alimony." (Internal quotation marks omitted.) *Sanchione* v. *Sanchione,* supra, 173 Conn. 407. It further determined that the trial court's finding of a substantial change in circumstances was not warranted and therefore that the alimony award should not have been modified. Id.

Similarly, in *Wanatowitz,* we concluded that the husband had failed to sustain his burden of establishing a substantial change in circumstances as a result of his alcoholism and expenditure of $7000. *Wanatowitz* v. *Wanatowitz,* supra, 12 Conn. App. 619. In that case, the husband admitted that he " 'blew' " the $7000 while drinking, and there was no evidence connecting that money to counseling or medical assistance. Id., 620. We then indicated that "[a]n inability to pay alimony due to indebtedness or other factors must be excusable and not brought about by the defendant's own fault." Id.; cf. *Richard* v. *Richard,* 23 Conn. App. 58, 63, 579 A.2d 110 (1990) (trial court improperly prevented defendant from presenting testimony on issue of whether he voluntarily changed jobs and improperly found he failed to show substantial change in circumstances).

Both *Sanchione* and *Wanatowitz* stand for the principle that if a party's culpable conduct causes an inability to pay an alimony award, then the threshold question of whether a substantial change of circumstances exists is not met. Accordingly, a trial court may not then modify the alimony award. In the present case, the court modified the award. We conclude, therefore, that the court's use of *Sanchione* and *Wanatowitz* in its decision was misplaced. Nevertheless, we conclude that the court's decision remains proper. "[I]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Gaffey* v. *Gaffey,* 91 Conn. App. 801, 805 n.1, 882 A.2d 715, cert. denied, 276 Conn. 932, 890 A.2d 572 (2005).

As we previously noted, trial courts exercise broad discretion with respect to financial awards in dissolution cases. "Trial courts are vested with broad and liberal discretion in fashioning orders concerning the type, duration and amount of alimony and support, applying in each case the guidelines of the General Statutes. If the court considers the relevant statutory criteria when making its alimony and support award, the award may not be disturbed unless the court has abused its discretion." *Hartney* v. *Hartney*, 83 Conn. App. 553, 559, 850 A.2d 1098, cert. denied, 271 Conn. 920, 859 A.2d 578 (2004). Furthermore, "[a]ppellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cleary* v. *Cleary*, 103 Conn. App. 798, 800–801, 930 A.2d 811 (2007).

We have explained the specific method by which a trial court should proceed with a motion to modify after finding a substantial change in circumstances. "The trial court is limited to reviewing the current [financial] situation of the parties in light of the statutory criteria set forth in § 46b-82. . . . The use of the § 46b-82 criteria with respect to actions concerning § 46b-86 (a) has long been endorsed by our Supreme Court. For example, in *Borkowski* v. *Borkowski*, [supra] 228 Conn. 729 . . . the court stated: In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. They chiefly have to do with the needs and

financial resources of the parties. . . . More specifically, these criteria, outlined in General Statutes § 46b-82, require the court to consider the needs and financial resources of each of the parties . . . as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties. . . . Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification." (Citation omitted; internal quotation marks omitted.) *Gervais* v. *Gervais,* supra, 91 Conn. App. 850–51. We note that the court, in its January 24, 2007 articulation, expressly indicated that it considered, inter alia, "the statutory guidelines set forth in the various governing legislative enactments, including but not limited to [General Statutes §§] 46b-62, 46b-82, 46b-86 and 46b-87."[7] To the extent that the defendant claims that the court failed to consider the applicable statutory criteria, we are not persuaded.

We conclude that the record supports the court's findings underlying its modified support order and that the order does not constitute an abuse of discretion. There was evidence in the record detailing the defendant's talents and efforts in the success of the Stone Insurance Agency. Although there was a period of time when the defendant was not earning income and then a period where he obtained employment at an annual salary of $50,000, the court found that the defendant was not actively pursuing the options available to an individual with his experience and training. The court also was troubled by his failure to make any alimony

---

[7] We note that "[a] judge is presumed to have performed [her] duty properly unless the contrary appears." (Internal quotation marks omitted.) *Chyung* v. *Chyung,* 86 Conn. App. 665, 675, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005).

payments or even to initiate a discussion with the plaintiff as to a proposed payment plan. The court made this finding clear in both of its decisions. For example, in the August 11, 2006 decision, the court wrote that the defendant had "reveal[ed] an intent to delay present income potential and to lay the groundwork for future earnings." In the January 24, 2007 articulation, the court stated: "It is clear to the court that [the defendant] is pacing himself so as to avoid to the extent possible his obligations for the twelve year alimony payment period to which he himself had previously committed."

On the basis of the testimony regarding the defendant's employment history, the court found his earning capacity to be "far in excess" of his $50,000 income. The court later expressly indicated his *temporary* and *minimum* earning capacity to be $100,000 per year. It further described this amount as a " 'minimum,' " as it was not persuaded by the defendant's testimony that his earning capacity was more limited.

It is well established that earning capacity may form the basis of an order of support. *Wolf* v. *Wolf*, 39 Conn. App. 162, 169, 664 A.2d 315 (1995); see also *Venuti* v. *Venuti*, 185 Conn. 156, 161, 440 A.2d 878 (1981). "In appropriate circumstances, the trial court may base its financial orders on earning capacity rather than actual earned income. . . . The ultimate inquiry in determining the income reasonably available to the supporting paying spouse is the earning capacity of the supporting paying spouse. . . . The weight to be given the evidence and the credibility of the witnesses are within the sole province of the trial court, which had the unique opportunity to view the evidence presented in a totality of circumstances." (Citations omitted.) *Broderick* v. *Broderick*, 20 Conn. App. 145, 147–48, 565 A.2d 3 (1989).

"While there is no fixed standard for the determination of an individual's earning capacity . . . it is well

settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." (Citation omitted; internal quotation marks omitted.) *Bleuer* v. *Bleuer*, 59 Conn. App. 167, 170, 755 A.2d 946 (2000). The court ordered the defendant to pay $1154 in alimony and child support to the plaintiff on a weekly basis. This equals approximately $60,000 per year. On the basis of the record before us, we cannot conclude that this award was improper or that the court abused its discretion.

Furthermore, with respect to the court's order requiring that alimony accrue on a weekly basis in the amount of $1154, we also conclude that there was no abuse of discretion. As we noted, the court found the defendant's temporary and minimum earning capacity to be $100,000. It is clear, however, that after considering the evidence, the court was convinced that the defendant's capacity would rise in the near future. It found that the defendant's "apparent successful prospects reinforce[d] the court's belief that his earning capacity is strong and his talents are underused." It also noted that the noncompete clause would expire in September, 2008.

Finally, the court found that the defendant was attempting to avoid, to the extent possible, his twelve year alimony obligation. "When determining earning capacity, it also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations." *Bleuer* v. *Bleuer*, supra, 59 Conn. App. 170.

Given all of the aforementioned factors, we cannot say that it was an abuse of discretion for the court to order that weekly alimony accrue. The court's order

afforded the defendant relief by decreasing his immediate financial obligation by half. This resulted in allowing him the time and opportunity to resolve his employment and financial situations. It also provided him with interim protection from contempt actions for nonpayment while he remedied the situation. Finally, it served as an equitable resolution, as it protected the financial interests of the plaintiff, who received a durational alimony award and prevented the defendant from simply running out the clock on the award, which was premised on the parties' separation agreement. We conclude, therefore, that the court's award did not constitute an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.