### CHERYL JANSEN *v.* HERBERT JANSEN
### (AC 32070)

Robinson, Alvord and Flynn, Js.

Argued March 6—officially released June 12, 2012

*Charles D. Ray,* with whom was *Matthew A. Weiner,* for the appellant (defendant).

*Proloy K. Das,* with whom was *James M. Ruel,* and, on the brief, *Debra C. Ruel,* for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Herbert Jansen, appeals from the judgment of the trial court denying his motion to modify his alimony obligation to the plaintiff, Cheryl Jansen. On appeal, the defendant argues that the court abused its discretion in failing to find a substantial change in circumstances warranting modification of his alimony obligation pursuant to General Statutes § 46b-86 (a).[1] Specifically, he contends that his forced retirement is a substantial change in circumstances because

---

[1] General Statutes § 46b-86 (a) provides: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support

his annual taxable income decreased as a result. We find the defendant's claim to be meritless and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. On April 16, 2009, the defendant filed a motion to modify his alimony obligation to the plaintiff.[2] The defendant also sought a reduction in the amount of life insurance that he is required, pursuant to the parties' separation agreement (agreement), to maintain for the benefit of the plaintiff. The court, *Hon. Howard T. Owens, Jr.*, judge trial referee, heard the parties regarding the

guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. Modification may be made of such support order without regard to whether the order was issued before, on or after May 9, 1991. In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division. After the date of judgment, modification of any child support order issued before, on or after July 1, 1990, may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50."

[2] According to the defendant's testimony, he did not officially retire until July 3, 2009, yet he filed his motion for alimony reduction almost three months before this date. In his motion, he stated, "I am required to retire from my current employment and my income is substantially reduced."

motion on November 30 and December 1 and 2, 2009, and heard testimony from the plaintiff's expert witness, Philip J. DeCaprio, Jr., a forensic accountant who studied the parties' financial records.

The parties were married on April 7, 1973. After twenty-three years of marriage, the parties entered into the agreement on October 18, 1996, which agreement was then incorporated into the judgment of dissolution rendered by the court on the same date. The parties have two children, one of whom was a minor at the time of the dissolution. The agreement provided for monthly unallocated child support and alimony in the amount of $16,500 to be paid by the defendant to the plaintiff until her death or remarriage. The agreement also provided the defendant with the option to petition the court for relief if the plaintiff cohabitated with a person of the opposite sex for more than four months or if the plaintiff earned more than $75,000 in gross income per year. The plaintiff could seek modification, pursuant to the agreement, if the defendant's income increased by more than $150,000 per year. According to the agreement, the parties also had the right to modify the alimony award pursuant to § 46b-86 (a). The agreement required the defendant to maintain his existing life insurance policy in the face amount of $750,000 with the plaintiff as the irrevocable beneficiary for as long as the defendant was required to pay alimony to the plaintiff.

At the time of the dissolution, the defendant worked for the accounting firm of Arthur Andersen and earned a gross annual income of $629,616 with a net monthly income of $27,509 and assets worth $567,721. The plaintiff was a full-time graduate student with no monthly income and monthly household expenses exceeding $10,500. The defendant married his current wife, Anne Swope, four months after the judgment of dissolution was rendered. After the collapse of Arthur Andersen,

the defendant was employed as a partner at Ernst & Young. The defendant testified that the reason that he transferred title to or made Swope a joint owner of a substantial amount of his assets was because he and Swope anticipated potential claims of liability based on his partnership at Arthur Andersen.

While working at Ernst & Young, the defendant earned substantially more in gross income than he had at the time of the dissolution. The defendant purchased a home in Norwalk, but conveyed it by quitclaim deed to Swope in 2002. The Norwalk property was sold for approximately $950,000 and a home in South Carolina was purchased for approximately $600,000 in 2009. A year prior, in 2008, a home in Bolton Landing, New York was purchased for approximately $800,000. All of the properties were acquired solely with the defendant's funds and all of the expenses regarding the properties are paid by the defendant, yet the properties are titled only in Swope's name. The defendant also claims $200,000 of equity in a New York City apartment he purchased for his daughter.

The defendant and Swope have several joint checking accounts and certificates of deposit funded solely by the defendant but in which the defendant claims Swope maintains an equal interest. Swope also maintains a separate investment account with Charles Schwab (Schwab account) in which she has approximately $3.35 million in assets funded mainly with her bonus earnings from her job as an investment banker. The defendant claims that the Schwab account belongs solely to Swope despite the fact that he contributed more than $200,000 to the account.[3] The defendant, however, deposited the entirety of his almost $2 million annual earnings into the couple's joint accounts.

---

[3] Swope transferred back the $200,000 one week before trial.

The defendant pays substantially all of the couple's approximately $20,000 of monthly expenses. Swope pays for a de minimis amount of those expenses based on her approximately $430 per week of unemployment benefits, which she had been collecting from the government through the time of trial. The defendant also has gifted $20,000 annually to his adult children for the past five years. The defendant admits he bestowed these gifts without thought to his obligations to the plaintiff. The defendant also gifted $24,000 to his son's fiancée.

The defendant retired from Ernst & Young pursuant to the company's mandatory retirement policy, which requires partners reaching the age of sixty to retire, although he received permission to work until he was sixty-one. The defendant argued that his retirement status has resulted in a $100,000 gap between his income and his alimony obligation. He claimed, therefore, that his alimony obligation pursuant to the agreement should be reduced from $198,000 yearly to $40,000 yearly in order for him to sustain his current lifestyle while continuing to pay the plaintiff one third of his annual income.

The plaintiff's expert, DeCaprio, provided a detailed analysis of the parties' financial information. DeCaprio testified that the defendant's assets in October, 2009, were substantially higher than the assets he possessed on the date of the 1996 dissolution. DeCaprio testified that the combined assets of the defendant and Swope were in excess of $8 million and that 73.79 percent of those assets, some $6.3 million, were attributable to the defendant. He also testified that Swope was able to contribute to the Schwab account only because the defendant was contributing to her expenses. DeCaprio testified that the defendant paid all of his salary into jointly accessible funds while Swope maintained her assets separately. Finally, DeCaprio testified that the defendant and Swope had a "convoluted commingling

of funds." The defendant did not provide his own expert. Swope testified that she would agree that the couple's assets were indeed commingled.

On February 3, 2010, almost three months after the close of the hearing, the defendant filed a motion to open the evidence, alleging that the plaintiff had accepted new employment which increased her annual income to approximately $50,000. The plaintiff objected to the evidence as irrelevant based on the "safe harbor" provision in the agreement which allowed the plaintiff to earn up to $75,000 before the defendant could challenge the alimony agreement on the basis of her employment. The court summarily denied the motion to open the evidence on February 25, 2010.

On March 3, 2010, the court issued its memorandum of decision in which it made the following findings: "Since [the] defendant is retired there has been some diminution of his income but he clearly has the ability to pay the existing order and his station in life is no different than it was at the time of dissolution, in fact it has improved. While it is gallant that he would like to leave a substantial part of his assets to his heirs he must first abide by the court's October 18, 1996 judgment, which is a priority. [The] [d]efendant's annual income for the years from 2001 through 2008 exceeded the $630,000 he was earning at the time of the 1996 judgment. It should also be noted that the defendant has transferred substantial assets without consideration to his current wife and to his adult children as well. The defendant is currently paying the expenses for two homes and he owned no home at the time of the 1996 dissolution. While [the] defendant's current wife is unemployed she refuses to spend any of the $3.35 million in her Schwab account to support herself and [the] defendant has made it clear he will not avail himself of any of that money. . . .

"Since the judgment, the defendant combined all of his assets and earnings with his current wife but the actions of the wife have hardly been reciprocal. . . . [The] [d]efendant's current affidavit admits to owning assets in excess of $3 million. He has also commingled his assets with his wife's since 1997, which has resulted in his wife having a substantial increase in her assets while the defendant pays a substantial portion of her bills. [The] [d]efendant's wife candidly admits that she intends to live off of his retirement income in the foreseeable future. The defendant has failed to establish a substantial change in his effort to modify the alimony order. . . . Since the defendant and his wife have commingled assets that are now worth in excess of $8,000,000 it is not up to the court to discern and dissect the sum that is clearly attributable to either or both. Clearly the defendant's culpable conduct by his commingling of assets cannot lead him to complain that he cannot meet his current alimony obligation or entitle him to any modification. His naked assertion is simply without merit.

"In addition the defendant has during the period involved, made gifts to each of his two children totaling $200,000. He has also given a gift of $24,000 to his son's fiancé. [The] [d]efendant admits a diversion of funds to his new wife and contemplates additional gifts in the future." The court then denied the defendant's motion for modification. This appeal followed.

On July 14, 2010, the defendant filed a motion for articulation with the trial court, which motion the court denied. The defendant subsequently filed a motion for review with this court on August 13, 2010, which motion was granted, but the relief requested was denied. The defendant then filed a motion pursuant to Practice Book § 64-1 on September 17, 2010, followed by a motion to perfect the trial court record for appeal on September

28, 2010, which motion this court denied. Additional facts will be set forth as necessary.

The defendant claims that the court abused its discretion in failing to find a substantial change in circumstances warranting modification of his alimony obligation. We disagree.

We first set forth the applicable standard of review. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *Schade* v. *Schade*, 110 Conn. App. 57, 62, 954 A.2d 846, cert. denied, 289 Conn. 945, 959 A.2d 1009 (2008).

The parties' agreement provided that the defendant's alimony obligation could be modified pursuant to § 46b-86 (a). "[Section] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred." (Internal quotation marks omitted.) *Simms* v. *Simms*, 283 Conn. 494, 502, 927 A.2d 894 (2007).

"We previously have explained the specific method by which a trial court should proceed with a motion brought pursuant to § 46b-86 (a). When presented with a motion for modification, a court must first determine

whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . *Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the [General Statutes] § 46b-82 criteria, make an order for modification.* . . . The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. . . . Simply put, before the court may modify an alimony award pursuant to § 46b-86, it must make a threshold finding of a substantial change in circumstances with respect to one of the parties." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Schade* v. *Schade*, supra, 110 Conn. App. 63.

In the present case, the court made a threshold finding that no substantial change in the defendant's financial circumstances existed. The defendant argues that the court should have found a substantial change in circumstances on the basis that he was forced to retire from his job at Ernst & Young, thereby decreasing his annual income. We are not persuaded.[4]

---

[4] The defendant urges this court to determine that the trial court made inconsistent findings as to whether he showed a substantial change in circumstances. The court declined to decrease the defendant's alimony obligation, finding that no substantial change in circumstances existed, but lowered the amount of the life insurance policy that the defendant is required to maintain for the benefit of the plaintiff from $750,000 to $500,000. The defendant argues that the court implicitly found a substantial change in circumstances with regard to the life insurance policy inconsistent with its stated finding that no change existed. We note, however, that the court explicitly stated that "[t]he defendant has failed to establish that a substantial change in circumstances has occurred in order to warrant a modification of alimony." We do not know from the record before us whether the original life insurance award was intended to be a guarantee for alimony or a property settlement. See *Billings* v. *Billings*, 54 Conn. App. 142, 159, 732 A.2d 814 (1999). Regardless, it appears that the court may have erred in reducing the life insurance award. If the life insurance award was a part of the property settlement, the court lacked jurisdiction to change the award; if it was a guarantee for alimony, then the court lacked authority to change the order without finding a substantial change in circumstances. The court never

While the court recognized that the defendant's yearly income decreased due to his retirement, it found that there was no substantial change in circumstances because the defendant engaged in culpable conduct.[5] This court has stated that "if a party's culpable conduct causes an inability to pay an alimony award, then the threshold question of whether a substantial change of circumstances exists is not met." Id., 65 n.6; see also *Sanchione* v. *Sanchione*, 173 Conn. 397, 407, 378 A.2d 522 (1977) (new hearing ordered where trial court reduced alimony without finding whether inability to pay alimony was result of defendant's own extravagance, neglect, misconduct or other unacceptable reason); *Wanatowicz* v. *Wanatowicz*, 12 Conn. App. 616, 620, 533 A.3d 239 (1987) (no substantial change in circumstances warranting alimony reduction because defendant's reduction in funds brought about by his own fault after he " 'blew' " his money while drinking).[6]

stated that it based its determination that the life insurance should be reduced on a substantial change in circumstances and we will not infer such a finding in the face of the court's expressed finding to the contrary. To the extent that the court may have improperly lowered the amount of life insurance, neither party appealed that issue, and we decline the defendant's invitation to conclude that the court's apparent error in reducing the life insurance award, an error that actually favors the defendant, provides an adequate basis for reversal of the court's decision to maintain the status quo as to the alimony order.

The defendant also argues that the court abused its discretion by refusing to grant the defendant's motion to open the evidence in which he attempted to argue that the plaintiff had new employment that increased her salary to approximately $50,000. We determine that this claim is meritless because the defendant never sought a modification based on the plaintiff's substantial change in circumstances. Therefore, the trial court did not abuse its discretion by denying the motion to open the evidence.

[5] The court also found that the defendant's station in life had substantially improved and that he had considerably increased his assets since the dissolution.

[6] The defendant claims that he never argued that he had an "inability to pay"; however, he claims several times in his appellate brief that his current income and assets are insufficient to meet his alimony obligations due to a "$97,000 shortfall between his annual income and his alimony obligation." Additionally, it was not disputed at the trial court that during depositions,

In the present case, the court found that the defendant commingled his assets with that of his new wife, Swope, and that the defendant gave large gifts to Swope and to his adult children without consideration and without regard for his lifetime alimony obligation to the plaintiff. The court found that the defendant failed to meet his burden of showing a substantial change in circumstances that was not tainted by his culpable actions.

"[A]ppellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Schade* v. *Schade*, supra, 110 Conn. App. 66.

The court's findings are not clearly erroneous. The court determined that the defendant's assets at the time of dissolution totaled approximately $568,000, as contrasted with his admitted assets at the time of the motion for modification in excess of $3 million. Further, the defendant and Swope share commingled assets amounting to approximately $8 million,[7] and it was the

the defendant argued that his alimony obligation was going to cause him to go bankrupt. Regardless, his argument is inapposite. This court has repeatedly stated that "[i]t is hornbook law that what a spouse can afford to pay for support and alimony is a material consideration in the court's determination as to what is a proper order." (Internal quotation marks omitted.) *Panganiban* v. *Panganiban*, 54 Conn. App. 634, 642–43, 736 A.2d 190, cert. denied, 251 Conn. 920, 742 A.2d 359 (1999).

[7] DeCaprio testified at length with respect to the defendant's commingling of assets with Swope which resulted in the expert's attribution of income to the defendant being significantly greater than the assets the defendant listed on his 2009 financial affidavit. The defendant testified that he did not consider what he and Swope did to be commingling of funds and he disputed DeCaprio's view of his and Swope's finances. The court clearly credited

defendant's burden to show the court that this commingling was not culpable conduct. The court determined that the defendant did not meet that burden, and, on the basis of that determination, it concluded that no substantial change in circumstances existed. See *Richard* v. *Richard*, 23 Conn. App. 58, 62, 579 A.2d 110 (1990) ("[t]he burden of 'clearly and definitely' demonstrating the substantial change in the circumstances of either of the parties, however, remains with the moving party").

The defendant and Swope admitted that they transferred assets originally purchased or owned by the defendant into Swope's name in order, they testified, to avoid creditors who might have sought those assets on the basis of the defendant's personal liability stemming from his employment at Arthur Andersen. Those transferred assets included two homes, which were purchased with the defendant's income, but titled only in Swope's name. Additionally, almost all of the defendant's many bank accounts are held jointly with Swope. Despite the fact that Swope enjoys joint ownership of these accounts, she also maintains the Schwab account in her sole name with more than $3 million in assets.[8]

Thus, the defendant would have had the court believe that Swope owns one half of all of his assets, but he does not own any of Swope's assets.[9] The court rejected

DeCaprio's testimony and did not credit the defendant's testimony, and it was well within the court's discretion to do so.

[8] Swope testified on cross-examination regarding her intentions for the Schwab account:

"[The Plaintiff's Counsel]: Okay. So you're going to rely on your husband's retirement income to allow you to survive as long as possible until some day when unforeseen circumstances cause you to have to invade your Charles Schwab account, correct?

"[The Witness]: Yes."

[9] On cross-examination, the following colloquy took place:

"[The Plaintiff's Counsel]: But you recall [Swope] testifying that the Charles Schwab account that's not listed on this financial affidavit, that's solely in her name and has over $3.5 million in it, is hers and that you have no interest in it, correct?

the defendant's argument. The court's determination was based on its credibility determinations and weighing of the evidence, and we decline to disturb its decision. See, e.g., *Brown* v. *Brown*, 132 Conn. App. 30, 40, 31 A.3d 55 (2011). The defendant also admits that he gave large gifts to his adult children to the tune of hundreds of thousands of dollars. The defendant's commingling of his assets with Swope and his making of large gifts to Swope and to his children without consideration clearly constitutes culpable conduct as contemplated by our Supreme Court in *Sanchione* and by this court in *Schade* and *Wanatowicz*. Accordingly, the court's findings were not clearly erroneous, and the court did not abuse its discretion by determining that no modification of the defendant's alimony obligation was warranted.

The judgment is affirmed.

In this opinion the other judges concurred.

"[The Defendant]: That's correct, yes.

"[The Plaintiff's Counsel]: She did testify to that, right?

"[The Defendant]: That's my recollection, yes.

"[The Plaintiff's Counsel]: Right. . . . And the reason she said that you have no interest in that Charles Schwab account with $3.5 million in it was because she had earned all the money that went into that account, correct?

"[The Defendant]: That's what she said. . . .

"[The Plaintiff's Counsel]: So she did say that?

"[The Defendant]: Yes, she did.

"[The Plaintiff's Counsel]: Okay. Thank you. And then I asked her, well . . . [the defendant] earned all the money that went into the Citibank checking account, so why is it fair that she is assigned 50 percent of that account? And she said that she, that in her mind, she considers that whole account yours, didn't she?

"[The Defendant]: I can't recall. It's very possible she said that.

"[The Plaintiff's Counsel]: Okay. But you don't think that because you think that she gets 50 percent of that account even though you provided all the funds to that account?

"[The Defendant]: That's the way I think of it.

"[The Plaintiff's Counsel]: Okay. And so, to be clear, when [Swope] deposits funds that she earns into [an] account, they're all hers because she earned them, but when you earn funds and you deposit them into an account, you put it in a joint account, and all of a sudden, 50 percent of those funds become your wife's, correct?

"[The Defendant]: I guess you could look at it that way, yes."