******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SANDRA LEWIS *v.* LESLIE A. LEWIS III
(AC 36220)

Lavine, Sheldon and Bishop, Js.

*Argued October 15—officially released December 16, 2014*

(Appeal from Superior Court, judicial district of Danbury, Doherty, J. [dissolution judgment]; Winslow, J. [amended motion for order].)

*Marianne J. Charles*, with whom was *Jaime S. Dursht*, for the appellant (plaintiff).

*George J. Markley*, for the appellee (defendant).

*Opinion*

LAVINE, J. This appeal concerns the postdissolution order of the trial court, *Winslow, J.*, regarding the distribution of the net proceeds of the sale of the marital home. On appeal, the plaintiff, Sandra Lewis, claims that the court improperly (1) calculated the net proceeds of the sale, (2) construed the dissolution judgment, and (3) modified the dissolution judgment. We affirm the judgment of the trial court.

The following procedural history is relevant to the appeal. The marriage of the plaintiff to the defendant, Leslie A. Lewis III, was dissolved by the trial court, *Doherty, J.*, in a memorandum of decision issued on January 13, 2003.[1] In its memorandum of decision, the court stated in relevant part that the evidence permitted it "to find the conduct of the defendant was the significant cause of the breakdown of the marriage. To the extent that there is any discrepancy in the distribution of assets, that is the reason." The court found, among other things, that the defendant established his own business, which was lucrative due to his hard work and business acumen. The defendant's business success permitted the parties to enjoy the benefits of wealth. The court stated that because "the business profits are largely attributable to the defendant, the court finds that its fair market value under new management would be somewhat less than its current value under the defendant's ownership. That fact is important as it impacts the global asset distribution in this case and for the reason that the defendant's continued control of that business is the best assurance that the parties' income stream would not suddenly be reduced to a fraction of what it had been during the marriage. The other significant marital asset is the parties' equity in the marital residence" in Redding.

The court acknowledged the plaintiff's proposed orders that she be awarded the marital home, or its value, in lieu of her interest in the defendant's business. She, however, expressed "concern that the defendant might walk away from or 'tank' the business and render the financial orders unrealistic." The court found that "the plaintiff does not have the financial ability, absent alimony, to pay the debts and expenses of the marital residence. It is equally obvious that if the defendant were to no longer have the income he has been able to generate through his business, his equitable interest in the marital residence would be lost through foreclosure or bankruptcy. The only equitable way to reasonably maintain the viability of both is to award fractional interests of each asset."[2] The court found the fair market value of the marital home to be $635,000 and title to the home was encumbered by approximately $280,000 in debt.

In its distribution of the marital assets, the court

ordered that the defendant transfer his title and interest in the marital home to the plaintiff and that the plaintiff "hold the defendant harmless from the first mortgage and the home equity debt and . . . except as follows, all other obligations associated with said property including taxes, insurance and utilities. The defendant shall be responsible for all other mortgages or encumbrances on said property *at the time of this judgment* . . . ." (Emphasis added.) The court also ordered that the plaintiff had the right to sell the marital home, but if the home is sold, "the plaintiff shall pay to the defendant a sum equal to 35 [percent] of the net proceeds" of the sale. The court secured the plaintiff's obligation to pay the defendant his 35 percent interest by way of a lien on the title.

The plaintiff subsequently filed a motion for articulation and clarification regarding the mortgages that encumbered the marital home, among other things.[3] Judge Doherty denied the plaintiff's motion for articulation.

On March 17, 2003, the plaintiff filed a motion for contempt postjudgment in which she stated, in relevant part, that "[she] was *ordered to pay the first mortgage and equity line of credit.* . . . The defendant was ordered to pay all other mortgages on the real estate, which includes a mortgage to his mother . . . and a commercial loan for his business . . . ." (Emphasis added.) The plaintiff alleged that the defendant had failed to pay the mortgage for which he was "*currently obligated.*" (Emphasis added.) On March 21, 2003, the defendant, too, filed a motion for articulation and/or clarification regarding his interest in the home.[4]

On June 3, 2003, Judge Doherty issued a supplemental memorandum of decision "in response to a motion for articulation of the court's decree." The court ordered, in relevant part: "The plaintiff shall have exclusive use and possession and legal title of and to the marital residence . . . . The defendant is ordered to transfer all of his right, title and interest in and to said real property to the plaintiff forthwith. . . . The plaintiff is to be *solely responsible* for and *shall indemnify* the defendant against payment of the *current* mortgage, property taxes, insurance, utilities and the *current* home equity debt. The defendant shall be solely responsible for all other mortgages or encumbrances on said property in existence *at the time of this judgment* including any obligation owed to [his mother]. . . . The *defendant shall have an equitable lien against said property in the amount of* [*35 percent*] *of its fair market value.* . . . The plaintiff shall have the right to sell said real property at any time. . . . When and if said real property is sold by the plaintiff, and after payment of the mortgage(s), broker's fees, attorney's fees and other usual and customary closing expenses, *the net proceeds shall be divided* [*65*] *percent to the*

*plaintiff and* [*35*] *percent to the defendant* within [sixty] days of such sale. Each party shall be responsible for any taxable gain in said proportion. . . ."[5] (Emphasis added.)

On June 12, 2003, the plaintiff filed a motion for clarification postjudgment in which she identified evidence of four mortgages on the marital home that was presented at trial.[6] The plaintiff quoted the following language from Judge Doherty's memorandum of decision: "[T]he plaintiff is to be responsible for and hold the defendant harmless from the first mortgage and home equity debt and, all other obligations associated with said property including taxes, insurance, and utilities. Except that the defendant shall be responsible for all other mortgages on said property *at the time of this judgment* including the obligation owed to [his mother]." (Emphasis in original.) The plaintiff represented that she had made timely payments on the first mortgage and home equity line of credit held by People's Bank. She also represented that the defendant had failed to pay the commercial loan secured by a mortgage in favor of People's Bank, which was then threatening foreclosure. The plaintiff requested that the court clarify that "all other mortgages" refers to the commercial loan related to the defendant's business. In ruling on the plaintiff's motion for clarification, Judge Doherty stated that his order "all other mortgages" applies to the "defendant's commercial loan, secured by a home equity mortgage in the amount of $90,313.39."

On July 12, 2013, the plaintiff sold the marital home for $700,000. The closing statement prepared by her closing attorney stated that the net proceeds of sale were $326,030.65, after the expenses of sale and two mortgages in the amounts of $186,974.45 and $147,367.90 were deducted from the sale price. The closing statement indicated that the defendant was due $111,967.16. On July 15, 2013, the defendant filed a motion for order regarding the distribution of the equity in the marital home, claiming that he was due $177,923.59 from the proceeds of the sale. On September 6, 2013, the defendant filed an amended motion for order regarding the distribution in which he claimed he was due $231,130.55. Prior to the resolution of the defendant's motions for order regarding the distribution, the parties agreed that they each would take a $100,000 distribution from the net proceeds. Judge Winslow ordered the balance of the funds placed in escrow pending her resolution of the defendant's motions for order.

The parties appeared before Judge Winslow on September 3 and October 21, 2013. The court acknowledged that there were factual disputes about the existing mortgages on the marital home. The parties agreed, however, that defendant had paid the mortgages for which he was responsible. When asked if the plaintiff had paid

the first mortgage, the plaintiff's counsel represented that the plaintiff had refinanced the marital home a number of times.

After reviewing Judge Doherty's memorandum of decision dissolving the marriage of the parties and his supplemental memorandum of decision, Judge Winslow stated that "they're not substituting for each other. They're to be taken together. It's a supplemental memorandum of decision. It's not a correction or a clarification. It's a supplemental memorandum of decision. So you have to take them both together."

The dispute between the parties centered on paragraph 5 of the supplemental memorandum of decision, which stated in part "if the real property is sold by the plaintiff, and *after payment of the mortgage(s)*, broker's fee, attorney's fees and other usual and customary closing expenses, the net proceeds shall be divided [65] percent to the plaintiff and [35] percent to the defendant . . . ." Judge Winslow found that the only mortgages Judge Doherty could have been referring to were the ones known to exist at the time of dissolution.

When the plaintiff refinanced the mortgage and home equity loan for which she was solely responsible, she received cash from the equity in the property. During the hearing before Judge Winslow, the plaintiff argued that, on the basis of paragraph 5 of the supplemental memorandum of decision, the refinanced mortgages were to be paid out of the proceeds of sale before the parties' respective shares were calculated and distributed. The court reformulated the argument stating to the plaintiff's counsel: "So, your position is, she could take any amount of money that she wanted out of the equity in the house, and pocket that or use it for whatever purpose, if she wished, and that . . . any money she took out would otherwise have been 35 percent his had she not taken it out. So, your claim is that she was entitled to take equity out of the house, essentially." The plaintiff's counsel stated, "yes," in response. The court rejected the plaintiff's argument, stating that "it is ludicrous to suggest that [Judge Doherty] intended that [the plaintiff] could take any additional equity out of the property, and then restrict [the defendant's 35] percent to what was left after she's already taken equity out of the property. It's frankly, not in any way contemplated by the judge, nor can we possibly read logically, into this judgment."

The court provided the formula by which the parties' respective distributions were to be calculated. Applying the court's formula to the facts produced the following results. The marital home was sold for $700,000; the net proceeds, after deducting allowable costs, was $656,032.50. The plaintiff's 65 percent of the net proceeds is $426,421.12 out of which she is to pay any mortgage or home equity line of credit encumbering the home. The defendant's 35 percent share of the net

proceeds is $229,611.38. The court further ordered that given that each party had taken $100,000 from the escrow account, the remaining sum of $125,977.65 was to be released to the defendant, and the plaintiff is to pay the defendant $3633.73 for the shortfall of the defendant's 35 percent share. The plaintiff thereafter appealed to this court.

On appeal, the plaintiff claims that the court (1) improperly calculated the net proceeds of the sale, (2) misconstrued the judgment of dissolution, and (3) modified the dissolution judgment. Each of the plaintiff's claims addresses the following question: What did Judge Doherty intend with respect to the distribution of the proceeds of sale. We, therefore, have consolidated our analysis of the plaintiff's claims.[7]

The plaintiff bases her claim on paragraph 5 of Judge Doherty's supplemental memorandum of decision, which states: "When and if said real property is sold by the plaintiff, and *after* payment of the mortgage(s), broker's fee, attorney's fees and other usual and customary closing expenses, the net proceeds shall be divided [65 percent] to the plaintiff and [35 percent] to the defendant within [sixty] days of such sale." (Emphasis added.) The plaintiff argues that the mortgages that existed at the time of the sale were to be paid from the proceeds of sale, along with fees and costs of sale, prior to distributing to the parties their respective shares. We find this argument wholly unpersuasive. The plaintiff's claim fails because she views paragraph 5 in isolation, rather than in the context of the whole judgment of dissolution, which includes the supplemental memorandum of decision, and the encumbrances on the marital home at the time it was sold.

Resolution of the plaintiff's claims requires us to construe Judge Doherty's January 13, 2003 judgment of dissolution, as supplemented by the memorandum of decision he issued on June 3, 2003. "The construction of a judgment is a question of law for the court. . . . We review such questions of law de novo." (Citation omitted; internal quotation marks omitted.) *Robaczynski* v. *Robaczynski*, 153 Conn. App. 1, 4–5, 100 A.3d 408 (2014). "As a general rule, judgments are construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Citation omitted; internal quotation marks omitted.) *Burke* v. *Burke*, 94 Conn. App. 416, 421, 892 A.2d 964 (2006). "Effect must be given to that which is clearly implied as well as to that which is expressed." (Internal quotation marks omitted.) *Schade* v. *Schade*, 110 Conn. App. 57, 64 n.5, 954 A.2d 846, cert.

denied, 289 Conn. 945, 959 A.2d 1009 (2008).

On appeal, the plaintiff complains that Judge Winslow improperly made her solely liable for the mortgages on the marital home *at the time of the sale*. In his memorandum of decision, Judge Doherty ordered the plaintiff to be responsible for the first mortgage and home equity debt and that the defendant was responsible for the remaining mortgage and home equity loan *at the time of the dissolution judgment*. In the supplemental memorandum of decision, Judge Doherty ordered the plaintiff to be responsible for the *current* mortgage and *current* home equity loan and to indemnify the defendant for the same. Moreover, the court ordered an equitable lien in favor of the defendant in the amount of 35 percent of the home's fair market value. Pursuant to the judgment, the plaintiff had the right to sell the marital home at any time and the proceeds of sale were to be divided in accordance with the court's distribution of the assets after the mortgages were paid. We agree with Judge Winslow's construction of the judgment that the only mortgages to which Judge Doherty possibly could have been referring to were those known at the time of dissolution, not any future mortgages on the property. The parties agree that all mortgages in existence at the time of dissolution were paid prior to the time the marital home was sold. Paragraph 5, therefore, cannot be applicable to the circumstances regarding the mortgages on the home at the time it was sold. Although Judge Doherty's judgment permitted the plaintiff to sell the marital home, the judgment cannot reasonably be read to mean that he intended either of the parties to further encumber the equity in the premises, which the plaintiff did when she refinanced the first mortgage and home equity loan. The reason the plaintiff received less money from the sale of the home was due to the fact that she refinanced the mortgages in an amount greater than the debt for which she was responsible at the time of the judgment of dissolution.

In her brief, the plaintiff relies on the case of *Billings* v. *Billings*, 54 Conn. App. 142, 144–147, 732 A.2d 84 (1999), to support her argument. *Billings*, however, is factually distinguishable from the present case. In *Billings*, both parties were responsible for the mortgages on the subject property, and the plaintiff wife was to be given a credit for the principal payments she made while she resided in the house. Id., 146. The manner of calculating the respective proceeds from the sale of the Billings' marital home are not applicable to the present case, in which Judge Doherty ordered the parties to be responsible for separate and distinct encumbrances on the marital home at the time of dissolution.

Moreover, the memorandum of decision ordered the plaintiff to be solely responsible for the first mortgage

and the home equity loan at the time the judgment of dissolution was rendered and that she was to *indemnify* the defendant in that regard. To indemnify means to "save harmless; to secure against loss or damage." (Internal quotation marks omitted.) *Vibert* v. *Board of Education*, 260 Conn. 167, 173, 793 A.2d 1076 (2002). The plaintiff's argument that the defendant was entitled to 35 percent of the net proceeds of the sale of the marital home after the two mortgages were deducted is contrary to the indemnification order. It also is contrary to the 35 percent lien the defendant has on the marital home pursuant to the judgment of dissolution.

The plaintiff contends that the practical effect of Judge Winslow's postjudgment order was to distribute to her much less than Judge Doherty intended. She correctly notes that the judgment of dissolution did not allocate certain sums of money to the parties, but rather percentages of interest in the parties' assets on the basis of undeterminable future events. She notes that the defendant was to receive 35 percent of the fair market value of the marital home if it was not sold in fifteen years from the date of judgment or 35 percent of the net proceeds of the sale if the home were sold within fifteen years. The plaintiff argues, however, that the judgment of dissolution intended the parties to be jointly responsible for all of the mortgages on the marital home at the time of sale. The plaintiff's argument fails because Judge Doherty ordered that the plaintiff was solely responsible for the first mortgage and home equity loan on the home *at the time of dissolution* and that she was to indemnify the defendant with respect those mortgages. Judge Doherty also ordered that "the defendant shall be responsible for all other mortgages or encumbrances on said property *at the time of this judgment* . . . ." The mortgages on the marital home at the time it was sold did not encumber the property "at the time of [the dissolution] judgment."

The defendant paid the mortgage held by his mother and the home equity loan for his business. Those former debts no longer encumbered the title to the marital home at the time of the sale. The defendant's 35 percent interest in the marital home was free of debt. Although the plaintiff paid off the first mortgage and home equity loan, she refinanced those mortgages, which increased the amount of debt for which she was obligated. If the plaintiff received less than Judge Doherty intended, it is because she refinanced the mortgages, which increased her debt obligation to an amount greater than that which existed at the time of the dissolution judgment. We agree with Judge Winslow that the plaintiff's claim is not logical given the facts of this case and conclude that the court did not miscalculate the distribution of the proceeds of sale or misconstrue the judgment of dissolution.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Only Judge Doherty's orders regarding the proceeds of the sale of the parties' marital home are at issue in this appeal.

[2] The court ordered the defendant to pay the plaintiff alimony and child support in the amount of $2500 per week until his obligation to pay child support ended. Thereafter the defendant was ordered to pay the plaintiff alimony in the amount of $2000 per week for fifteen years from the date of judgment.

[3] The plaintiff's motion for articulation/clarification concerned the mortgages encumbering the marital home. The motion stated in relevant part: "*Plaintiff is solely responsible for the mortgages in the* [*one*] *and* [*two*] *position* and Defendant for [three] and [four]. Plaintiff seeks clarification in that if she refinances mortgages [one] and [two] in her name alone the Defendant will have to refinance [three] and [four] in his name alon[e]. Failure to do so would prevent the Plaintiff from refinancing at more favorable interest rates." (Emphasis added.)

[4] The defendant's motion for articulation stated that Judge Doherty ordered that the defendant "have a lien against" the marital home in the "amount of 35 [percent] of its current fair market value." The defendant requested that the court issue an order "to create, memorialize, give notice of and establish priority of the [l]ien, as to third parties." Judge Doherty's supplemental memorandum of decision addressed the defendant's request for articulation in paragraph 7. The first six paragraphs of the supplemental memorandum of decision appear to be the court's response to the plaintiff's motions for contempt, although not so stated.

[5] The court also ordered in paragraph 7 that "[t]he recording of the Memorandum of Decision and the Supplemental Memorandum of Decision in this matter shall create, memorialize, give notice of and establish priority of the defendant's equitable lien as to third parties."

[6] The four mortgages encumbering the marital home at the time of the dissolution judgment were a first mortgage held by People's Bank, a home equity line of credit secured by a mortgage held by People's bank, a loan from the defendant's mother secured by a mortgage, and a commercial loan for the defendant's business secured by a mortgage in favor of People's Bank. The parties agree that all of the mortgages that were on the marital home at the time of the dissolution judgment were paid prior to the sale of the home.

[7] As a consequence of our conclusion that Judge Winslow properly construed the judgment of dissolution and correctly gave effect to its terms, there is no need for us to address the plaintiff's claim that Judge Winslow improperly modified Judge Doherty's martial dissolution judgment.